677 A.2d 317

COMMONWEALTH of Pennsylvania, Appellee,

v.

Melvin SPEIGHT, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1995.

Decided May 20, 1996.

Mitchell Scott Strutin, Philadelphia, for Melvin Speight.

Catherine Marshall, Norman Gross, Philadelphia, Robert A. Graci, Harrisburg, Office of Atty. Gen., for Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

## *OPINION OF THE COURT*

CASTILLE, Justice.

This is a direct appeal from a sentence of death imposed by the Court of Common Pleas of Philadelphia County.[1] Following a jury trial, appellant was convicted of two counts of first degree murder,[2] two counts of aggravated assault,[3] one count of criminal conspiracy to commit murder,[4] and one count of possession of an instrument of crime.[5] The jury concluded that the two aggravating circumstances[6] it found outweighed the one mitigating circumstance[7] it found, and returned a sentence of death on each murder conviction.

At the conclusion of the trial, trial counsel was granted permission to withdraw and new counsel was appointed. Following a hearing on trial counsel's ineffectiveness, post-verdict motions were denied and the trial court imposed the death sentence for each murder conviction. In addition, the trial court sentenced appellant to consecutive terms of ten to twenty years imprisonment on each aggravated assault conviction, a consecutive term of five to ten years imprisonment on

1. 42 Pa.C.S. § 9711(h)(1).

2. 18 Pa.C.S. § 2502(a).

3. 18 Pa.C.S. § 2702.

4. 18 Pa.C.S. § 903.

5. 18 Pa.C.S. § 907.

6. The aggravated circumstances were that appellant knowingly created a grave risk of death to a person other than the victim, 42 Pa.C.S. § 9711(d)(7), and that appellant had been convicted of another murder committed at the time of the offense at issue, 42 Pa.C.S. § 9711(d)(11).

7. The mitigating circumstance was the appellant's age (19) at the time of the offense. 42 Pa.C.S. § 9711(e)(4).

458

the criminal conspiracy conviction and a consecutive term of two-and-a-half to five years imprisonment on the conviction for possessing an instrument of crime.

## I. *SUFFICIENCY OF THE EVIDENCE*

■ Although appellant does not challenge the sufficiency of the evidence, as in all cases in which the death penalty has been imposed, this Court is required to independently undertake a review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The standard for reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to support all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Carpenter,* 511 Pa. 429, 435, 515 A.2d 531, 533–34 (1986). After a review of the record, we find that the evidence is sufficient to support appellant's convictions.

■ Testimony at trial established that at approximately 9:00 p.m. on August 31, 1992, Gary Carson, Allen Carson, William Wilson, Neal Carter and David Scott (referred to collectively as "Carson's group") were drinking beer at the corner of Wyalusing and Conestoga Streets in Philadelphia when they observed a man in an orange jumpsuit, known as "Inky Man," approach the corner along Conestoga Street and wave as if signalling to persons further up the street. Indeed, in response to Inky Man's signal, appellant and three other men, Shannon Faison, Lamar Douglas and Cornell Bennet, also known as "Junior" (referred to collectively as "appellant's group"), suddenly appeared at the corner and approached the group. Gary Carson testified that in the weeks preceding the encounter, one of the members of the appellant's group, Bennet, had repeatedly warned him to stay away from that particular corner because his presence was interfering with the drug operation Bennet ran at that location.

Upon appellant's group's arrival at the corner, Faison said to Carson's group, "What's up with my man's corner?" However, before anyone could respond, appellant and his cohorts produced firearms and started firing at Carson's group. At the time of the shooting, appellant's group was standing on the sidewalk between Carson's group and the curb.

William Wilson was shot ten times, including a fatal shot to the left chest which pierced his heart and punctured his right lung. Four of the shots hit Wilson from behind. Wilson was pronounced dead at the scene. Neal Carter was shot three times from behind, including a fatal shot which pierced his heart. He was pronounced dead upon arrival at the hospital. Allen Carson was shot once in the back, severing his spine and permanently paralyzing him. Gary Carson was shot eight times, but survived. Only David Scott was not hit. A ballistics expert testified that at least three and possibly four different firearms were used in the attack.

Gary Carson and Allen Carson both testified that appellant was standing between Faison and Bennet, but they did not know if he had a gun. David Scott testified that the person standing between Faison and Bennet had fired a gun, although he could not identify who that person was.

The day following the shooting, Gary Carson identified Bennet from a photographic array. A week later, he also identified Faison and Douglas from photographic arrays. Finally, on September 18, 1992, Gary Carson identified appellant as the fourth assailant from a photographic array. An arrest warrant was obtained on that date and officers went to appellant's house to arrest him. However, appellant's mother told the officers that appellant was working in Baltimore and she did not know how to reach him. As a result, appellant was listed as a fugitive in the National Crime Information Computer network. Appellant was arrested on a fugitive warrant in Mansfield, Massachusetts on September 25, 1992. At the time of the murders, appellant had a full head of hair, but when he was arrested his head was completely shaved.

 Evidence is sufficient to sustain a conviction for first degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Mitchell*, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). Specific intent to kill can be inferred by the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Butler*, 446 Pa. 374, 378, 288 A.2d 800, 802 (1972).

Here, the evidence the Commonwealth presented sufficiently established that appellant and his co-conspirators approached Carson's group to remove them, once and for all, from their location so that Bennet's drug business would not be hampered. The evidence further demonstrates that appellant's group acted together in firing numerous shots at Carson's group and that the middle person, identified by one eyewitness as the appellant, had personally fired shots at the group.[8] Such evidence clearly demonstrated that the killings were committed with the malice aforethought sufficient to sustain appellant's convictions for first degree murder. *Commonwealth v. Joseph*, 451 Pa. 440, 449, 304 A.2d 163, 168 (1973) (all co-conspirators to a murder can be found guilty of first degree murder, even if the co-conspirator did not inflict the wound which resulted in death); *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977) (evidence that defendant who did not inflict fatal wound was member of conspiracy to kill three persons was sufficient to support guilty verdict against defendant in prosecution of three counts of first degree murder).

## II. GUILT PHASE

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

 Appellant alleges that trial counsel was ineffective during the guilt phase of trial. When asserting ineffective

---

8. Douglas was convicted of two counts of first degree murder and sentenced to life imprisonment. Faison was acquitted of murder but convicted of conspiracy. Bennet is still a fugitive. "Inky Man" was never identified or arrested.

assistance of counsel, appellant must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have any reasonable basis designed to effectuate his client's interests; and (3) counsel's ineffectiveness prejudiced appellant. *Commonwealth v. Edmiston*, 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993), *citing, Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). Counsel is presumed to have acted in his client's best interest; thus, it is appellant's burden to prove otherwise. *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074 (1993); *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981).

### 1. *Calling Certain Witnesses*

■ Appellant contends that trial counsel was ineffective by calling the following witnesses to testify because their testimony was harmful to his defense. We note that such a claim of ineffectiveness may not be evaluated in hindsight. *Commonwealth v. Williams*, 537 Pa. 1, 28, 640 A.2d 1251, 1264–65 (1994) (citations omitted). Rather, all that we need determine is whether the course of action chosen by trial counsel at the time of trial had some reasonable basis designed to effectuate his client's best interests, and, if so, we will deem counsel effective and our inquiry ends. *Commonwealth v. Buehl*, 540 Pa. 493, 510, 658 A.2d 771, 780 (1995) (citations omitted). When viewed in its proper light, appellant's ineffectiveness claim must fail.

### a. David Scott

■ Appellant contends that counsel was ineffective for calling David Scott to testify because it was Scott's testimony which placed a gun in appellant's hand. Both Gary and Allen Carson had testified during the Commonwealth's case-in-chief that appellant had been standing between Bennet and Faison at the time of the shooting. Scott testified that he could not identify appellant as having been present at the scene. However, Scott also testified that the person standing between Faison and Bennet had a gun and fired some of the shots.

Appellant argues that Scott's testimony was not necessary because the defense strategy was not that appellant was not there, but, rather, that appellant was merely present and did not participate in the shootings, and that therefore counsel was ineffective for calling a witness who offered incriminating testimony.

Trial counsel testified at the evidentiary hearing on post-verdict motions that he called Scott as a defense witness because Scott was an eyewitness to the crimes and had repeatedly stated to trial counsel prior to trial that he did not recall appellant being present at the scene, including in the hallway just before the defense case was commenced. Trial counsel was also aware that Scott had told police that there had been three assailants and he had identified one of those assailants, Junior, from a photographic array, but that, despite having a better view of the three assailants than the other witnesses, Scott had not given any description that matched appellant and had been unable to identify appellant either at two line-ups, the preliminary hearing or trial as one of the assailants.[9]

Given that two other eyewitnesses had already testified that appellant was standing between two of the co-conspirators, and was therefore in the heart of the action, it was reasonable for trial counsel to call a witness whose testimony could call into question the testimony of the other eyewitnesses.[10] Thus, Scott's testimony indicating that appellant was not the middle person was consistent with appellant's defense of mere presence. Trial counsel can not be deemed ineffective because the witness ultimately testified in an inconclusive fashion for the first time on cross-examination that the appellant could have been the person in the middle with a gun.

9. Indeed, Scott's testimony at trial was consistent with his prior statements. Scott testified that there were three assailants, but that he did not recognize appellant as having been one of them.

10. Indeed, trial counsel cross-examined both Carsons regarding whether they were sure that appellant was standing between two of the shooters, and used a prior statement given by Allen Carson, in which he stated that appellant was leaning against a street pole during the shooting, to impeach his credibility on that issue.

 

### b. Detective Curcio

█ Appellant also contends that trial counsel was ineffective for calling Detective Kenneth Curcio to testify at trial. Detective Curcio testified that Allen Carson had given a statement shortly after the shooting in which he stated that appellant was standing apart from the other assailants at the time of the shooting and was merely leaning against a street pole. However, appellant contends that trial counsel should not have called Detective Curcio to read the statement because Carson stated in the prior statement that appellant was acting as a lookout.

Given the choice between testimony which placed appellant in the midst of the group of assailants or testimony that placed appellant apart but speculated that he may have been acting as a lookout, it was reasonable for counsel to opt for the second alternative. Testimony that appellant was standing off on his own leaning against a pole was consistent with the defense of mere presence. Furthermore, regardless of Carson's speculations as to appellant's purpose in leaning against the pole, the statement was inconsistent with Carson's testimony at trial and therefore called into question the credibility of Carson's testimony in its entirety. Because counsel had a reasonable basis for calling Detective Curcio, he was not ineffective.

### 2. *Employment in Massachusetts*

█ Appellant next contends that trial counsel was ineffective for failing to present testimony at trial that appellant had secured employment in Massachusetts prior to the shooting in order to refute the inference that his flight evidenced a guilty conscience. However, at the evidentiary hearing on post-verdict motions, appellant himself testified that he left Philadelphia for Massachusetts on the same day that he was hired for the job in Mansfield, Massachusetts. N.T. 2/23/94 at 82. Because appellant did not secure the job in Massachusetts prior to the shooting, counsel would not have been able to

present testimony to the contrary.[11] Counsel will not be deemed ineffective for failing to present evidence which did not exist.

### 3. *Failing to Present Character Testimony*

Appellant next argues that trial counsel was ineffective for failing to call character witnesses to testify during the guilt phase of trial as to appellants' reputation in · the community for non-violence. In order to establish that counsel is ineffective for failing to call witnesses, appellant must show, in addition to meeting the general standard to establish ineffective assistance of counsel, that the witnesses existed, were available and willing to testify on appellant's behalf; that counsel knew of or should have known of the existence of the witnesses; and that appellant was prejudiced by the absence of the testimony which would have been offered. *Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221 (1996).

Appellant does not specifically identify in his brief to this Court any witnesses whom he believes trial counsel should have called to testify. Rather, he merely states that trial counsel should have called the same six character witnesses whom he called during the penalty phase. However, the testimony offered by those witnesses during the penalty phase would not have been helpful to appellant during the guilt phase, and appellant fails to present any evidence as to what the substance of their testimony would have been during the guilt phase.[12]

Moreover, trial counsel testified at the evidentiary hearing that he had planned to call members of appellant's family to

11. Appellant was not able to secure any definitive testimony in his favor on this issue for the evidentiary hearing on trial counsel's ineffectiveness. Barbara Walker, the person who hired appellant for the job, testified only that she hired him between June and December of 1992. No documentation regarding appellant's employment was presented.

12. The testimony presented at the penalty hearing was properly limited to whether appellant should be sentenced to death and did not include testimony which would have shed light on his guilt or innocence. The witnesses in the penalty phase, all members of appellant's family, testified that he had been raised in a good Christian home, had a daughter and did not deserve to be executed.

testify as to his non-violent character, but changed his mind when the trial court ruled that the prosecution would have been permitted to cross-examine those witnesses regarding their knowledge of appellant's prior conviction for unlawfully possessing a firearm, as well as the conduct underlying appellant's juvenile adjudications for assault. Counsel reasoned that the limited benefit of the testimony of family witnesses who were partial to appellant was outweighed by the potential harm of informing the jury of appellants' prior violent conduct. Trial counsel's decision to refrain from presenting character testimony which would have opened the door to damaging evidence of appellant's prior record was not unreasonable. *Commonwealth v. Peterkin,* 511 Pa. 299, 318–19, 513 A.2d 373, 382–83 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987) (trial counsel not ineffective for failing to call character witnesses who may be cross-examined regarding their knowledge of conduct by a defendant which reflects on the character trait in issue). Thus, this claim fails.

### 4. *Prosecutorial Misconduct*

 Appellant next alleges that trial counsel was ineffective for failing to object to prosecutorial misconduct during closing arguments. At the outset, we note that a prosecutor's comments are not evidence and that the trial court clearly instructed the jury on this rule of law. N.T. 6/24/93 at 168. Moreover, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and a hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Sam,* 535 Pa. 350, 362, 635 A.2d 603, 608 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994). With these standards in mind, we find that the complained-of comment was not improper.

 Appellant contends that the prosecutor improperly expressed an opinion regarding appellant's guilt when he stated:

I don't really have too much more to tell you about the evidence. As I said, I think it's abundantly clear what occurred here, who was where and who did what. I submit to you that they're all guilty. They're guilty of horrible crime. [sic]

N.T. 6/23/93 at 135. These comments must be considered in the context of the entire twenty-five-page summation. *Id.* The complained of statement followed twenty-two pages in which the prosecutor reviewed the evidence presented at trial in detail. When so viewed, the statement was clearly not an expression of personal opinion. *Id.* (prosecutor does not express personal opinion by arguing that, *based on the evidence,* defendant was guilty). Because the prosecutor's comment was not an expression of personal opinion, but rather was a permissible conclusion based on the evidence presented, trial counsel was not ineffective for failing to object. *Id.*

## B. *TRIAL COURT ERROR—JURY INSTRUCTIONS*

Appellant next argues that the trial court erred in denying appellant's request for a jury instruction on heat of passion voluntary manslaughter. However, a heat of passion instruction is only warranted where the evidence would support a verdict based on voluntary manslaughter. *Commonwealth v. Browdie,* 543 Pa. 337, 349–50, 671 A.2d 668, 674 (1996) (a trial court shall only instruct on "heat of passion" voluntary manslaughter, or any other offense, where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict).

As appellant concedes in his appellate brief, the evidence in the instant case would not have supported such a verdict.[13] Under the Crimes Code, a person is guilty of

13. Voluntary manslaughter is defined as follows:

(a) **General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

voluntary manslaughter if at the time of the killing he acted under a sudden and intense passion resulting from serious provocation by the victim. 18 Pa.C.S. § 2503(a); *Commonwealth v. Walker*, 540 Pa. 80, 91, 656 A.2d 90, 95, *cert. denied*, —— U.S. ——, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995). "Heat of passion" includes emotions such as anger, rage, sudden resentment or terror, which renders the mind incapable of reason. *Commonwealth v. Harris*, 472 Pa. 406, 408, 372 A.2d 757, 758–59 (1977). In the instant case, no evidence was presented that appellant or his co-conspirators were acting under "heat of passion" or that the killing was the result of a "serious provocation" from any of the victims. To the contrary, the evidence was that appellant and his cohorts approached a group of unarmed men standing on a public street corner and began firing a hail of bullets at them. Moreover, such an instruction would have been inconsistent with appellant's defense that he was merely present. Therefore, the trial court did not err in declining to instruct the jury on heat of passion voluntary manslaughter.

Appellant also argues that trial counsel was ineffective for failing to submit a written request for this jury instruction. However, the argument on this issue is not developed in appellant's brief. Nevertheless, because appellant was not entitled to the instruction, he was not prejudiced by counsel's failure to submit a request in writing. *Commonwealth v. Rainey*, 540 Pa. 220, 235, 656 A.2d 1326, 1334, *cert. denied*, —— U.S. ——, 116 S.Ct. 562, 133 L.Ed.2d 488 (1995) (counsel cannot be ineffective for failing to request an unwarranted jury instruction). Therefore, this issue is meritless.

**(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they exited, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

**(c) Grading.**—Voluntary manslaughter is a felony of the second degree.

18 Pa.C.S. § 2503.

### III. *PENALTY PHASE*

**A. *INEFFECTIVE ASSISTANCE OF COUNSEL***

#### 1. *Absence of Significant History of Felony Convictions*

 Appellant further alleges that trial counsel was ineffective during the penalty phase for failing to present evidence that appellant had no significant history of prior criminal convictions so as to establish a mitigating factor under 42 Pa.C.S. § 9711(e)(1). Trial counsel testified at a post-trial evidentiary hearing that he decided not to pursue that mitigating circumstance because it would have opened the door for the Commonwealth to introduce evidence of appellant's prior conviction for a violation of the Uniform Firearms Act and several prior juvenile delinquency adjudications for assault.[14] Trial counsel can not be ineffective for declining to attempt to present a mitigating factor where such action would have allowed the Commonwealth to introduce appellant's history of violence, which obviously could have been harmful to appellant. *Commonwealth v. Basemore,* 525 Pa. 512, 531, 582 A.2d 861, 870 (1990), *cert. denied,* 502 U.S. 1102, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992) (reasonable trial strategy not to argue lack of significant history of criminal convictions where it could open the door to a single robbery conviction). Hence, this claim fails.

#### 2. *"Life Means Life" Jury Instruction*

 Next, appellant argues that trial counsel was ineffective for failing to request a jury instruction that a life sentence means that the appellant must spend his natural life in prison

---

**14.** It is unclear from the record how many juvenile adjudications there were or whether they were for aggravated or simple assault. The trial court indicated in its opinion that there were two adjudications for simple assault, while appellant stated in his brief to this Court that there were "several" adjudications for aggravated assault, and the Commonwealth stated in its brief to this Court only that there were three adjudications for assault. A review of the record does not clarify this issue. Regardless, the juvenile adjudications are admissible to rebut the mitigating factor that appellant lacks a significant history of criminal convictions. *Commonwealth v. Stokes,* 532 Pa. 242, 262, 615 A.2d 704, 714 (1992).

without the possibility of parole.[15] Appellant contends that when the jury asked the trial court for the actual definition of a life sentence, it was clearly indicating its concern regarding appellant's future dangerousness, and that therefore an instruction that life means life without parole should have been requested under *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).[16]

At the outset, *Simmons* was not decided until after the completion of appellant's trial. Prior to *Simmons,* the law of this Commonwealth expressly prohibited juries from being informed that life means life without parole. *Commonwealth v. Christy,* 540 Pa. 192, 217, 656 A.2d 877, 889, *cert. denied,* —— U.S. ——, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995). Trial counsel will not be deemed ineffective for failing to anticipate a change in the law. *Id.*

Furthermore, *Simmons* states that a jury must be informed that life means life without the possibility of parole only when the *prosecutor* injects concerns of the defendant's future dangerousness into the case. *Simmons, supra* at ——, 114 S.Ct. at 2190. Because the prosecutor did not make appellant's future dangerousness an issue in any sense, the instruction would not have been required under *Simmons.* Therefore, this claim has no merit.

## IV. *LEGALITY OF SENTENCE*

Appellant's final claim is that the sentence is disproportionate because he was sentenced to death by one jury for

15. This issue was not raised in post-verdict motions even though appellant was represented by new counsel. Because the determination of appellant's guilt was made prior to January 1, 1994, the issue is therefore technically waived. Pa.R.A.P. 302(a); Pa.R.Crim.P. 359 (prior version, rescinded effective January 1, 1994). Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra* at 26, 454 A.2d at 942, so as to avoid future claims of ineffective assistance of appellate counsel.

16. In response to the jury's question, the trial court instructed that, "a life sentence is a life sentence as it is set forth and beyond that it is not for your consideration. A life sentence is what it purports to be and you are to consider that as such and nothing more and I cannot give you any further definition." N.T. 6/25/93 at 76.

each first degree murder conviction, even though he claims he was not the shooter, while one of his co-defendants, Lamar Douglas, whom appellant claims was one of the shooters, was sentenced by another jury only to *life* imprisonment on each of two first degree murder convictions, even though both appellant's and Douglas' convictions arose out of the same incident. Although we are required to conduct a proportionality review as part of our statutory duty in all capital cases,[17] we will address this issue first as appellant raises a specific challenge to the proportionality of his sentence.

At the outset, evidence was presented at trial that appellant *was* one of the shooters in this case. Moreover, the jury rejected the mitigating circumstance that appellant's role in the crime was relatively minor.[18] That determination indicates that the jury either concluded that appellant fired some of the fatal shots or, at a minimum, that his participation was not minor.

Furthermore, we decline to accept appellant's argument that he was similarly situated to Lamar Douglas and therefore should have been similarly sentenced. A review of the sentencing information maintained by the Administrative Office of the Pennsylvania Courts (AOPC) on Lamar Douglas' case shows that a life sentence was imposed because the jury was unable to agree on the appropriate sentence to be imposed. The jury in that case was presented with the same two aggravating circumstances as appellant's jury. However, the mitigating circumstances presented to the jury in Lamar Douglas' case were that the defendant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); the defendant's age at the time of the crime, 42 Pa.C.S. § 9711(e)(4); and any other evidence of mitigation concerning the character of the defendant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8). Only one of those mitigating circumstances, appellant's age, was found to exist in appellant's case. Because the separate juries were presented with different evidence regarding the character of the defendants,

17. 42 Pa.C.S. § 9711(h)(3)(iii).
18. 42 Pa.C.S. § 9711(e)(7).

appellant and Douglas were not similarly situated for sentencing purposes.

Moreover, this Court has held that a death sentence is not disproportional merely because the alleged actual shooter was sentenced to life. *Commonwealth v. Haag*, 522 Pa. 388, 408, 562 A.2d 289, 299 (1989); *Commonwealth v. Frey*, 504 Pa. 428, 444, 475 A.2d 700, 708, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). In determining whether a death sentence is disproportionate in relation to similar cases, consideration must be given to the circumstances of the crime and *the character and record of the defendant. Id.;* 42 Pa.C.S. § 9711(h)(3)(iii) (emphasis added). Because a sentencing jury is required to look beyond the facts of the crime to the character and record of the individual defendant, different sentences for co-conspirators does not mean that one of the sentences is disproportionate.

Moreover, in accordance with *Zettlemoyer, supra* at 63, 454 A.2d at 961, we have reviewed the sentencing data compiled by the AOPC pertaining to similar cases and conducted our own review, and conclude that the sentence of death imposed upon appellant is not excessive or disproportionate to the sentences imposed in other similar cases. *Commonwealth v. Stevens*, 543 Pa. 204, 670 A.2d 623 (1996) (judgment of sentence of death affirmed where jury found as aggravating circumstances that the defendant created a grave risk of death to someone other than the victim and that the defendant had been convicted of another murder and as mitigating circumstances that the defendant lacked a significant criminal history and that the defendant was suffering from a severe mental or emotional disturbance); *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994) (judgment of sentence of death affirmed where jury found as aggravating circumstances that the defendant created a grave risk of death to someone other than the victim and that the defendant had been convicted of another murder and also found unspecified mitigating circumstances); *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763 (1994) (judgment of sentence of death affirmed where jury found as aggravating circumstances that the defendant committed the

murder in the perpetration of a felony and that the defendant had been convicted of another murder and as mitigating circumstances that the defendant lacked a significant criminal history, that the defendant was suffering from a severe mental or emotional disturbance, the defendant's age and an unspecified mitigating circumstance under the catchall provision); *Commonwealth v. Judge,* 530 Pa. 403, 609 A.2d 785 (1992) (judgment of sentence of death affirmed where jury found as aggravating circumstances that the defendant created a grave risk of death to someone other than the victim and that the defendant had a significant history of criminal convictions and as a mitigating circumstance that the defendant was suffering from a severe mental or emotional disturbance). *See Frey, supra* at 443, 475 A.2d at 707–08.

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3). We have already determined that the sentence is not disproportionate. Furthermore, after reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor, but rather based upon the eyewitness testimony of two witnesses that appellant participated in firing shots that killed two men.[19]

In addition, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S.

---

19. . Appellant also claims that the sentences are arbitrary, capricious and disproportionate. However, he presents no argument on these claims and this Court will not make his argument for him.

§ 9711(d). Here, the first aggravating circumstance found by the jury was that in the course of committing the murders appellant created a grave risk of death to another person. 42 Pa.C.S. § 9711(d)(7). The evidence at trial established that, in addition to the two victims who died as a result of the shooting, Allen Carson was paralyzed and Gary Carson was seriously wounded, and David Scott was in the immediate area of the four victims who were shot. Because three victims besides the ones who were murdered were placed in grave risk of danger by appellant's activities, this aggravating circumstance was supported by sufficient evidence.

The jury also found an aggravating circumstance under 42 Pa.C.S. § 9711(d)(11) for each murder conviction, that appellant had been convicted of another murder committed either before or at the time of the offense at issue. The same jury that sentenced appellant convicted him of two murders committed at the same time. Thus, the evidence supported each of these aggravating circumstances.

Accordingly, we affirm the verdict and sentence of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.[20]

**20.** Within ninety days of the date the sentence of death is upheld by this Court, the Prothonotary of this Court is directed to transmit to the Governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).