777 A.2d 1057

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Scott A. LAICH, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Aug. 17, 2001.

20

Pamela L. Neiderhiser, Greensburg, for S. Laich.

John Peck, Greensburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

Following a jury trial, Appellant Scott A. Laich was found guilty of two counts of first degree murder [1] for the killing of his estranged girlfriend, Krista Jill Omatick, and John Eric Pistininzi on July 29, 1996. For the reasons that follow, we reverse Appellant's judgment of sentence and remand for a new trial.

Appellant and Omatick had been engaged in a relationship for approximately two years and were living together up until the week before the killings. On the evening of July 28, 1996,

[1]. 18 Pa.C.S. § 2502(a).

Appellant, who had been attempting to reconcile with Omatick, drove past her apartment and noticed that a light was on inside. He drove to a pay phone and called her and asked if he could come over to see her. Omatick declined, telling him that she was tired and was going back to sleep. Appellant continued to drive around the area of Omatick's apartment, ultimately deciding to get out of the car and approach the apartment to "see what was going on there." (N.T., 8/6/97, at 424.) As Appellant got out of the car, he retrieved a .40 caliber handgun. Upon approaching the apartment, he heard what he believed to be Omatick and a man engaged in sexual relations. At that point, according to Appellant, he "just snapped." (N.T., 8/6/97, at 425.) He forced his way into the apartment and fatally shot Omatick, who was naked, as she came down the stairs. Appellant proceeded upstairs toward the bedroom, fired a shot through the bedroom door, kicked open the door, and fatally shot Pistininzi. Appellant drove to his father's home where he called 911 and reported the crimes. The state police arrived and transported Appellant to the police barracks were he subsequently gave a statement detailing the crimes.[2]

At trial, Appellant's defense was not that he did not perform the killings, but rather, that he was not guilty of first-degree murder. Appellant contended that he was guilty only of voluntary manslaughter because he acted in the heat of passion after hearing what he believed to be Omatick engaged in sexual relations with another man. The jury nonetheless convicted Appellant of two counts of first-degree murder and Appellant was subsequently sentenced to two consecutive life sentences. On appeal, the Superior Court affirmed Appellant's judgment of sentence.

At issue in this appeal is whether the trial court erred in admitting the testimony of Connie White, a Commonwealth witness, regarding statements Omatick made to her approxi-

2. The only evidence regarding Appellant's actions at the apartment on July 28–29, 1996, aside from the police investigation at the crime scene, was Appellant's statements to the police and his father, and the statements contained in his 911 call shortly after the killings.

mately one week prior to the shootings. During her testimony, White stated that she had the following conversation with Omatick:

Q: And what did she [Omatick] say that he [Appellant] said to her?

A: She said that he said if he couldn't have her, if—that if he ever caught her with another man, that he would kill them both.

(N.T., 8/7/97, at 553–54.)

Prior to trial, Appellant filed a motion in limine seeking to exclude White's testimony regarding her conversation with Omatick on hearsay grounds. The trial court ruled that White's testimony containing Omatick's hearsay statement was admissible because it was relevant to show Omatick's state of mind regarding her relationship with Appellant. (N.T., 8/4/97, at 71–72.) In his brief to this Court, Appellant contends that the trial court abused its discretion in admitting White's testimony because Omatick's state of mind regarding her relationship with Appellant was irrelevant in light of his defense that he committed the crimes in the heat of passion. We agree.

Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and this Court will not reverse the trial court's decision absent an abuse of that discretion. *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 414 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *Commonwealth v. Puksar*, 559 Pa. 358, 740 A.2d 219, 225 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 42 (2000). An out-of-court declaration containing another out-of-court declaration is double hearsay. *Chmiel*, 738 A.2d at 417. "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. This requirement is satisfied when each statement comes within an exception to the hearsay rule." *Id.* (citation omitted).

■  Here, White's testimony contained double hearsay because it relayed Appellant's out-of-court statement through Omatick's out-of-court statement. Appellant's statement to Omatick is not barred by the hearsay rule because a defendant's out-of-court statements fall within the party admission exception to the hearsay rule. *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 257 (1988). The issue in this case, therefore, is whether Omatick's statement to White satisfied the hearsay rule. Both the trial court and the Superior Court found that Omatick's statements to White met the state of mind exception to the hearsay rule and were therefore admissible.

■  Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate her state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception. *Commonwealth v. Collins*, 550 Pa. 46, 703 A.2d 418 (1997)(citing *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520, 525 (1978), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)). Out-of-court declarations that fall within the state of mind hearsay exception are still subject to general evidentiary rules governing competency and relevancy. *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305, 1319 (1996). Accordingly, whatever purpose the statement is offered for, be it to show the declarant's intention, familiarity, or sanity, that purpose must be a "factor in issue," that is, relevant. *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271, 274 (1974). Evidence is relevant if it logically tends to establish a material fact in the case, if it tends to make a fact at issue more or less probable, or if it supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Johnson*, 556 Pa. 216, 727 A.2d 1089, 1102 (1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000).

In the instant matter, both the trial court and the Superior Court found that Omatick's statement to White satisfied the state of mind exception to the hearsay rule because it evidenced Omatick's state of mind regarding her relationship

with Appellant. We find, however, that the trial court erred in admitting White's testimony because Omatick's state of mind regarding her relationship with Appellant was irrelevant in this case.

Appellant's defense at trial was based upon the theory that he was guilty of voluntary manslaughter, a lesser degree of homicide than first-degree murder. Murder of the first degree is an "intentional killing," which is defined, in part, as a "willful, deliberate, and premeditated killing." 18 Pa.C.S. § 2502(a), (d). However, "if at the time of the killing [the defendant] is acting under a sudden and intense passion resulting from serious provocation[,]" the defendant is guilty of voluntary manslaughter. 18 Pa.C.S. § 2503(a). In both crimes, the actor commits the act with the intent to kill. However, the difference between first-degree murder and voluntary manslaughter is whether the actor committed the killings under a "sudden and intense passion resulting from serious provocation." This Court has defined "passion" as:

> [A]nger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected.... Passion, as used in a charge defining manslaughter ... means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection....

*Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286, 289 n. 4 (1972)(citing *Commonwealth v. Colandro*, 231 Pa. 343, 80 A. 571 (1911)).

In *Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981), we addressed the relevancy of a homicide victim's state of mind as it related to the defendant's defense of provocation. The defendant, Thornton, was convicted of first-degree murder following his shooting of the victim. Thornton admitted killing the victim and relied upon theories of self-defense and provocation. At trial, a witness testified that the victim told the witness that he carried a gun because "the Thornton brothers were after him." *Id.* at 250–51. On appeal, Thornton asserted that the victim's statement was inadmissible

28

hearsay. The Commonwealth argued in response that the victim's out-of-court statement met the state of mind exception and was relevant because it established that the victim was fearful of Thornton. *Id.* at 251. In rejecting the Commonwealth's contention, we held that, "the victim's state of mind was not a matter in issue in the case. It was [Thornton's] state of mind, not that of the victim, which was material to establish the degree of guilt, if any, of the charge of criminal homicide." *Id.*

Here, as in *Thornton,* what Omatick believed about the state of her relationship with Appellant was completely irrelevant to Appellant's degree of guilt. Appellant admitted killing Omatick and Pistininzi, but argued that he had only done so with provocation. In light of Appellant's defense, it was *Appellant's* state of mind at the time of the killings that was relevant as to whether he committed the crimes with premeditation or whether, as he claims, he was acting with a "sudden and intense passion resulting from serious provocation." Contrary to what the lower courts concluded, Omatick's state of mind regarding her relationship with Appellant was simply not relevant given Appellant's defense.[3] Accordingly, even if the trial court properly found that the state of mind exception had been met, it still erred in allowing White to testify to Omatick's out-of-court statement regarding Appellant's out-of-court statement because such testimony was not relevant to the case.[4]

**3.** Omatick's statement is only relevant when it is considered for its substantive truth—that Appellant told her that he would kill her and anyone with whom she was involved. However, accepting her statement for its substantive truth removes it from the state of mind hearsay exception, making it inadmissible. *See Thornton,* 431 A.2d at 251(victim's declaration that the defendant was after him only relevant if considered for its substantive truth; however, when considered for its substantive truth, the declaration is inadmissible hearsay because it no longer meets any hearsay exception).

**4.** Contrary to the dissent's contention, Omatick's out-of-court statement is not admissible pursuant to the forfeiture by wrongdoing hearsay exception. *See* Pa.R.E. 804(b)(6)("A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.") It is clear from the language of the exception that the exception only applies

The Commonwealth argues, however, that even if White's testimony containing the hearsay was erroneously admitted, the error was harmless beyond a reasonable doubt. Again, we disagree.

It is well established that an error is harmless only if we are convinced beyond a reasonable doubt that there is no reasonable possibility that the error could have contributed to the verdict. *Commonwealth v. Ardestani*, 558 Pa. 191, 736 A.2d 552, 556 (1999). The Commonwealth bears the burden of establishing the harmlessness of the error. *Id.* This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial affect of the error so insignificant by comparison that the error could not have contributed to the verdict. *Id.* at 556–57.

The Commonwealth first contends that White's testimony regarding her conversation with Omatick was merely cumulative of other, properly admitted evidence of the deteriorating relationship between Omatick and Appellant.[5] The Commonwealth's contention, however, is without merit. Since

when a party's wrongdoing is done with the intention of making the declarant unavailable to testify as a witness. *See* 30B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 7078 (INTERIM ED.)("Rule 804(b)(6) is an attempt to respond to the problem of witness intimidation[.]") If a party's wrongdoing was for another purpose, *e.g.*, killing the declarant based upon personal animosity, the exception does not apply. The dissent's reliance on a line of federal cases applying the federal forfeiture by wrongdoing exception, which is identical to Pennsylvania's exception, is misplaced since those cases involved wrongdoing that was intended to prevent a declarant from testifying. None of the cases applied the exception in circumstances where the wrongdoing was not intended to procure a declarant's unavailability for trial, such as in the instant case.

5. The Commonwealth presented evidence that White overheard Appellant and Omatick arguing prior to his moving out of Omatick's apartment, that Omatick removed Appellant's clothing from the apartment, and that Appellant actually moved out of the apartment.

it was Appellant's state of mind that was at issue, the key inquiry is whether there was properly admitted cumulative evidence of Appellant's statement to Omatick that he would kill her if he caught her with another man. The Commonwealth has not pointed to, nor has our review of the record revealed, any such evidence.

█ The Commonwealth also argues that properly admitted and uncontradicted evidence overwhelmingly established Appellant's guilt.[6] In support of its argument, the Commonwealth cites to *Thornton*, where we held that the erroneously admitted hearsay statement of the victim was harmless error. The *Thornton* decision, however, is distinguishable from the instant matter. In *Thornton*, the defendant, Thornton, argued that he was only guilty of voluntary manslaughter because he acted in self-defense and out of provocation in killing the victim after learning that the victim had physically attacked his mother and sister with a baseball bat. We held that based upon the overwhelming evidence that the killing was intentional, the improper admission of the victim's statement that "the Thornton brothers were after him" was harmless. *Thornton*, 431 A.2d at 252. Specifically, we noted that three to four hours elapsed from the time Thornton learned of the beatings until he killed the victim, that he looked for the victim in two different areas, and that Thornton's companion also shot the victim. *Id.* We also observed that the only evidence supporting Thornton's claim was his own testimony that he was "upset" when he learned of the attacks on his family and that he thought the victim was trying to draw a weapon when Thornton shot him. *Id.*

The facts of the instant case are distinguishable. First, the evidence indicates that Appellant acted almost immediately, not hours later, upon hearing what he believed to be Omatick engaged in sexual relations. Second, there is no conclusive evidence that Appellant knew or believed that Omatick was in

6. The Commonwealth notes that Appellant parked his vehicle in a secluded area, walked up to the apartment with a loaded handgun, broke into the apartment, shot the victims, fled the scene, and did not call for help or assistance.

a relationship with another man or engaged in sexual relations when he approached the apartment. Finally, evidence of provocation came not only from Appellant's statements immediately following the killings, but also from the observations of both the state police and Appellant's father. Based upon these factual distinctions, *Thornton*, as it relates to the issue of harmless error, is not controlling in the instant case.

After reviewing the record, we are not convinced beyond a reasonable doubt that the erroneous admission of Appellant's statement could not have contributed to the jury's verdict. Accordingly, Appellant's judgment of sentence is reversed and jurisdiction is relinquished.

Mr. Justice CASTILLE files a dissenting opinion.

Madame Justice NEWMAN did not participate in the consideration or decision of this case.

CASTILLE, Justice, Dissenting.

By his own admission, appellant forcibly broke into the home of his former girlfriend, Krista Jill Omatick, in the middle of the night, wielding a loaded, .40 caliber, semi-automatic handgun. Once inside, he shot Ms. Omatick at point-blank range through the left eye, killing her. He then proceeded to the upstairs bedroom, where he shot John Eric Pistininzi once in the chest, killing him.

The majority now awards appellant a new trial because it believes that Ms. Omatick's out-of-court statement, made one week before the killing, and admitted for the limited purpose of revealing her state of mind regarding the deteriorating state of her relationship with appellant, was "completely irrelevant." This is so, the majority states, because appellant admitted the killings, but defended upon a theory that the victims "seriously provoked" him into a "sudden and intense passion" which rendered him guilty, at most, of voluntary manslaughter. *See* 18 Pa.C.S. § 2503(a). The so-called provocation consisted of the fact that, as he was trespassing upon Ms. Omatick's porch in the middle of the night, the armed appellant heard sounds which convinced him that Ms. Omatick

and Mr. Pistininzi were having sexual relations inside her residence. Appellant's provocation defense, the majority concludes, rendered Omatick's state of mind respecting her ultimately fatal relationship with appellant irrelevant.

In my view, the disputed evidence was unquestionably relevant both to the first-degree murder charges and to rebut the defense that the killings resulted from sudden provocation rather than premeditation. Furthermore, even if I agreed with the majority that the evidence was irrelevant, I would find its admission to be harmless under the circumstances in this case where appellant admitted responsibility for the killings and where the provocation/heat of passion defense was, in my view, inadequate as a matter of law.

Finally, I write to express my view that Ms. Omatick's relevant statement should have been admissible for the truth of the matter asserted and not subject to a state of mind evidentiary limitation, since it was appellant's own criminal conduct that caused the victim's unavailability. By killing Ms. Omatick, appellant waived any objection to the admission of her out-of-court statement. The Pennsylvania Rules of Evidence (and the corresponding Federal Rules of Evidence), which will apply at the retrial ordered by the majority, specifically recognize that a party forfeits any hearsay objection to the out-of-court statement of an unavailable witness where, as here, the party's own misconduct caused the witness's unavailability. Thus, upon retrial, the Commonwealth will be free to press for the admission of the statement as relevant, direct evidence of guilt. This fact renders the majority's grant of a new trial particularly inappropriate. For all of these reasons, I respectfully dissent.

A homicide victim's out-of-court statements revealing her view of her relationship with her killer have consistently been deemed admissible by this Court. As Justice Nigro noted in *Commonwealth v. Chandler*, 554 Pa. 401, 411, 721 A.2d 1040, 1045 (1998), such statements are admissible "under the 'state of mind' exception to the hearsay rule because [the victim's] opinion of [the relationship] [goes] to the presence of ill will, malice, or motive for the killing." *See also Commonwealth v.*

*Fletcher,* 561 Pa. 266, 293–94, 750 A.2d 261, 276 (2000), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000) (murder victim's statement was relevant to his state of mind regarding relationship with defendant and, therefore, admissible to prove presence of ill will, malice or motive for killing); *Commonwealth v. Puksar,* 559 Pa. 358, 368 n. 6, 740 A.2d 219, 225 n. 6 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 42 (2000) (victim's statement that he did not trust defendant and that victim and defendant were involved in dispute admissible .under state of mind exception to prove presence of ill will, malice, or motive for killing); *Commonwealth v. Collins,* 550 Pa. 46, 58–60, 703 A.2d 418, 424–25 (1997), *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998) (statements relevant under state of mind exception to prove, *inter alia,* motive).

Initially, I cannot agree with the majority's conclusion that the fact that appellant claimed that noises from Ms. Omatick's apartment provoked him to break into her home and commit a double homicide rendered the victim's perception of their relationship irrelevant. To the contrary, a fair inference arising from Ms. Omatick's statement that appellant had told her that he would kill her if he caught her with another man was that, in Ms. Omatick's eyes at least, her broken relationship with appellant was troubled and did not end amicably. This fact, in turn, was relevant to suggest that these were not heat of passion killings, as appellant claimed in retrospect, but killings that were motivated by a long-simmering and deep-seated malice and ill-will arising from appellant's jealous refusal to accept the termination of his relationship with Ms. Omatick. As such, the evidence directly rebutted the defense claim that appellant was acting out of a "sudden, intense" passion provoked by the victims' conduct when he killed them.

In addition, this evidence was probative of the elements of first-degree murder; thus, the Commonwealth was entitled to present it to discharge its affirmative burden of proof irrespective of the defense that appellant forwarded. I do not see how evidence otherwise relevant to the Commonwealth's affirmative burden suddenly loses its relevance merely because the

34

accused forwards one defense or another. Because evidence of Ms. Omatick's state of mind was probative of the nature of her relationship with appellant, and that relationship was probative of appellant's own state of mind at the time of the killings, the evidence was relevant to the degree of guilt and properly admitted for that purpose.

Even if I could agree with the majority that the victim's statement was inadmissible because her state of mind was irrelevant, I could not join in the award of a new trial because, in light of the contested issues in this trial, appellant was not prejudiced by the admission of such evidence. The trial court explicitly instructed the jury **on two separate occasions** as to the limited evidentiary purpose of this evidence: *i.e.,* that it could consider Ms. Omatick's statement only as evidence of her state of mind. R.R. 594–595, 761–762. The jury, of course, is presumed to follow such limiting instructions. *See Commonwealth v. Gease,* 548 Pa. 165, 175, 696 A.2d 130, 135 (1997), *cert. denied,* 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997). Thus, there was little danger that the jury would consider this evidence for any other reason than that instructed by the trial judge. On such a record, the very fact that the majority deems the evidence irrelevant should make its admission harmless.

Furthermore, I fail to see how the evidence can be said to have prejudiced appellant since the defense of provocation was simply absurd, and the evidence of guilt for first-degree murder was correspondingly overwhelming. For relevant purposes here, a verdict of heat of passion voluntary manslaughter would have been appropriate only if, at the time of the killing, the killer was acting "under a sudden and intense passion resulting from serious provocation" by the individual killed. 18 Pa.C.S. § 2503(a). "[W]hether a certain quantum of provocation is sufficient to support the defense of voluntary manslaughter is purely an objective standard." *Commonwealth v. Thornton,* 494 Pa. 260, 268, 431 A.2d 248, 252 (1981). "[T]he ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, be-

came impassioned to the extent that his mind was incapable of cool reflection." *Id.*

Here, as the majority recognizes, there was no question that appellant intentionally killed both victims. The only question raised in defense was whether the victims "seriously provoked" appellant in a legally relevant way such that the killings could be deemed to have been the product of a "sudden and intense passion." In my view, as a matter of law, the victims did nothing that could qualify by any stretch of the imagination as legal provocation. The alleged act of "provocation" arises from appellant's claim that he heard sounds that led him to believe that Ms. Omatick was having sexual relations with another man. Of course, appellant heard these sounds only after "sneaking up" uninvited to Ms. Omatick's residence in the middle of the night, and eavesdropping from her porch, while wielding a loaded semi-automatic handgun. Furthermore, appellant placed himself in that position only after Ms. Omatick had told him over the phone that she did not wish to see him that evening. At the time appellant "snuck up" on Ms. Omatick, the two were no longer paramours and were no longer living together; nor was there any cognizable legal connection between them.

Even viewing these facts in the light most favorable to the defense, they do not support a provocation defense. Indeed, the only provocation here arose from appellant's conduct. This is not a case where a defendant walks into his own bedroom, for example, only to be surprised to find his wife with another man. Appellant had no "right" to be where he was when he heard the "provoking" sounds. Nor did appellant suddenly stumble upon the alleged provocation; rather, his actions in the middle of this night amounted to stalking his former paramour. Furthermore, the fact that appellant brought a loaded semi-automatic handgun with him heavily suggests, not that he "stumbled upon" upon a provoking act, but rather that he was aggressively seeking a confrontation, one that he was fully prepared to handle with deadly force. This smacks only of premeditation.

The perfectly lawful act that appellant believed the victims were engaged in was none of appellant's business. The ensuing confrontation was one that appellant aggressively sought out; indeed, it was one he apparently armed himself for in anticipation thereof. I would hold as a matter of law that a reasonable person cannot be said to have been "provoked" at all by such circumstances of his own creation, much less provoked to such an extent that he lacked the capacity for cool reflection. *See Commonwealth v. Speight*, 544 Pa. 451, 466, 677 A.2d 317, 324 (1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997) (no heat of passion voluntary manslaughter instruction warranted where evidence established that defendant and cohorts approached group of unarmed men on public street corner and shot at them); *Commonwealth v. Watson*, 523 Pa. 51, 61, 565 A.2d 132, 137 (1989) ("not even a scintilla of evidence" to establish sufficient legal provocation to support voluntary manslaughter claim where defendant, who was aware that his ex-girlfriend had a new boyfriend, shot her two weeks after moving out of her residence, had applied to purchase gun two days before shooting, picked up gun two hours before shooting and had threatened to kill victim on two prior occasions); *Commonwealth v. Collins*, 440 Pa. 368, 374, 269 A.2d 882, 885 (1970) (defendant's suspicion that his wife had been seeing another man while he was incarcerated "d[id] not come close" to amounting to serious provocation necessary to warrant voluntary manslaughter charge).

Given the overwhelming evidence of the calculated nature of appellant's conduct that night, and the correspondingly insufficient evidence supporting the heat of passion defense, Ms. Omatick's out-of-court statements, admitted only to show her state of mind, cannot possibly have prejudiced appellant. Accordingly, he is not entitled to a new trial.

Finally, Ms. Omatick's statement relating appellant's threat to kill her should be deemed admissible not merely to show her state of mind, but also for the truth of the matter asserted as affirmative evidence of appellant's guilt. So admitted, Ms. Omatick's statement would establish that, at or about the time

she directed appellant to move out, he told her that if he could not have her, and if he ever caught her with another man, he would kill them both. The threat would be highly probative of premeditation and deliberation and would rebut the heat of passion defense. The successful objection to admission of the statement for its truth was that it was hearsay. In my view, however, appellant waived or forfeited any such objection by himself being the agent of Ms. Omatick's unavailability. Indeed, any other approach provides an absurd evidentiary incentive and reward for murder.

The Confrontation Clause of the Sixth Amendment provides that, "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This is a fundamental right, *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965), and is designed to secure for the defendant the opportunity of cross-examination. *See Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) ("[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination"). *See generally United States v. Dhinsa,* 243 F.3d 635, 650–51 (2d Cir.2001). The proscription against hearsay, of course, protects values similar to those protected by the Confrontation Clause. *See Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990). Nevertheless, they are not coextensive and, thus, the Confrontation Clause may act to bar evidence that might otherwise be admissible pursuant to a settled exception to the hearsay rule. *Id.*

Relevant to the analysis here is the fact that it has long been recognized that a defendant can waive his Sixth Amendment right of confrontation and, *a fortiori,* his hearsay objection, to the admission of an unavailable witness's statements where it was the defendant's own misconduct that rendered the witness unavailable.[1] The notion that the defendant's

1. The United States Supreme Court has recognized that criminal defendants can waive their right to confrontation through misconduct. *See Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970) (defendant waives his confrontation right and right to be

misconduct in procuring a witness's absence forfeits the right of confrontation has been justified as a matter of "simple equity" and "common sense:"

> It is hard to imagine a form of misconduct more extreme than the murder of a potential witness. Simple equity supports a forfeiture principle, as does a common sense attention to the need for fit incentives. The defendant who has removed an adverse witness is in a weak position to complain about losing the chance to cross-examine him. And where a defendant has silenced a witness through the use of threats, violence or murder, admission of the victim's prior statements at least partially offsets the perpetrator's rewards for his misconduct. We have no hesitation in finding, in league with all circuits to have considered the matter, that a defendant who wrongfully procures the absence of a witness or potential witness may not assert confrontation rights as to that witness.

*United States v. White,* 116 F.3d 903, 911 (D.C.Cir.1997). *See also Dhinsa,* 243 F.3d at 651–52. The *Dhinsa* Court recognized that this "waiver by misconduct" rule does no more than give force to the "maxim that 'the law [will not] allow a person to take advantage of his own wrong.' " 243 F.3d at 652, quoting *Diaz v. United States,* 223 U.S. 442, 458, 32 S.Ct. 250, 255, 56 L.Ed. 500 (1912) (intervening quotation omitted).

Federal Circuits other than the Second Circuit and the District of Columbia Circuit have likewise embraced the waiver by misconduct rule. *See, e.g., United States v. Houlihan,* 92 F.3d 1271, 1278–79 (1st Cir.1996) (defendants waived confrontation rights by murdering potential witness to prevent him from turning state's evidence); *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (same); *Steele v. Taylor,* 684 F.2d 1193, 1203–04 (6th Cir.1982) (defendant pimp who used influence and control over prostitute to induce her to refuse to

present at trial by repeatedly "conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom"); *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) ("No doubt the privilege [to confront one's accusers and cross-examine them] may be lost by consent or at times even by misconduct").

testify waived confrontation rights); *United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. Unit B 1982) (defendant who murdered potential witness to prevent him from turning state's evidence and/or testifying against him waived confrontation rights); *United States v. Balano*, 618 F.2d 624, 628 (10th Cir.1979) (defendant whose threats prevented potential witness from testifying waived confrontation rights); *United States v. Carlson*, 547 F.2d 1346, 1360 (8th Cir.1976) (defendant who intimidated witness to assure unavailability at trial waived confrontation rights). Indeed, the rule is so universally recognized that, effective December 1997, the Federal Rules of Evidence explicitly adopted the doctrine as a hearsay exception. *See* Fed.R.Evid. 804(b)(6) ("Forfeiture by Wrongdoing").[2]

Appellant's admitted killing of Ms. Omatick, which prevented her from appearing in court and testifying against him, amounted to the ultimate example of extreme misconduct. In my view, it is misconduct the type of which operates to waive or forfeit any confrontation/hearsay-based objection to relevant, out-of-court statements the victim made before appellant killed her. There is something deeply offensive about the notion that one can murder another and then object to admission of the victim's statements on the ground that the witness is "unavailable" for confrontation at trial. Appellant already had his confrontation with the victims; he selected his .40 caliber semi-automatic as the arbiter of his dispute. In light of these circumstances, I would hold that Ms. Omatick's relevant statement was admissible for the truth of the matter asserted, and not merely as evidence of her state of mind. Thus, I would affirm the trial court's ruling on this additional, distinct ground. That appellant received a windfall in the

**2.** Rule 804(b)(6) provides as follows:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(6) Forfeiture by Wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness. Fed.R.Evid. 804(b)(6).

statement being admitted for a more narrow purpose certainly does not entitle him to relief.

Finally, I would note that, after the trial in this matter, this Court embraced the concept of forfeiture of confrontation by wrongdoing when it adopted Rules of Evidence, which included *verbatim* the "Forfeiture by Wrongdoing" exception to hearsay contained in Fed.R.Evid. 804(b)(6). Thus, the Pennsylvania Rules of Evidence now state, as an exception to the hearsay rule, the constitutional waiver doctrine described above. Pa.R.Evid. 804(b)(6) provides that, "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is not excludable on hearsay grounds. This Rule, which became effective October 1, 1998, will be available at the retrial the majority now orders. That the statement upon which the majority grants relief should be admissible upon retrial for a broader, relevant purpose further demonstrates the error in the majority opinion reversing and precipitously granting a new trial.

Therefore, I respectfully dissent.