J-S33036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAHEEM ROBINSON | : | |
| | : | |
| Appellant | : | No. 1870 EDA 2017 |

Appeal from the Judgment of Sentence January 14, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001523-2015

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 28, 2018**

Appellant, Raheem Robinson, appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of first-degree murder, 18 Pa.C.S. § 2502, possession of an instrument of crime ("PIC"), 18 Pa.C.S. § 907, and abuse of a corpse, 18 Pa.C.S. § 5510.   Sentenced to life imprisonment without the possibility of parole for murder in the first degree, a concurrent term of two and one-half years for PIC, and a consecutive term of one to two years for abuse of a corpse, Appellant raises challenges to the sufficiency of the evidence and to evidentiary rulings of the court.  We affirm.

The trial court aptly sets forth relevant facts and procedural history, as follows:

> At trial, it was established that Defendant [hereinafter "Appellant"] and his companion, Sakinah Wyatt, were engaged in romantic activities in her bedroom on the second floor of 2533

_____

*   Former Justice specially assigned to the Superior Court.

North 11th Street, Philadelphia.  Appellant heard noises, went to the bedroom door and through a crack in the door observed the deceased, Shaquille Hall [hereinafter "Hall"].  Several days before, Ms. Wyatt and Hall had met when Hall tried to sell her a cellular telephone plan.  Because Ms. Wyatt did not have proper identification, she told Hall to come to her house and she would provide her identification.

Upon seeing Hall, Appellant became angry, pointed a gun at Ms. Wyatt and Hall, and [fatally] shot Hall.  Appellant went to a neighborhood store.  He was photographed by a security camera as he purchased bleach and other cleaning fluids.  Appellant returned to the house, cleaned up the blood stains, wrapped Hall's body in a sheet, bound it with duct tape, and left it in an alleyway. On May 1, 2014, children discovered the body in the alley behind the 2500 block of North 11th Street.  The police were called to the scene.

Dr. Albert Chu, Deputy Medical Examiner for the City of Philadelphia, testified that Hall suffered four gunshot wounds.  A wound to the head and a wound to the chest were fatal.  A third wound to the shoulder was potentially fatal.  A graze wound to the right hand was not immediately life-threatening.  (N.T. 1/6/15, at 41-42).

Fatimot Adekanmbi of the DNA laboratory of the Criminalistics Unit of the Office of Forensic Science, testified as an expert.  She stated that samples taken from the house were tested for DNA and compared against DNA samples taken from Appellant, Ms. Wyatt, and Hall.  The specimens either excluded Appellant or were inconclusive as to Appellant's DNA.  (N.T. 1/11/16, at 135-157). She explained, "Bleach would definitely kill DNA." (N.T. 1/11/16, at 172).

Appellant testified that he received a telephone call from a person named "Money," who asked him to come to Ms. Wyatt's residence. At the house, Appellant complied with Money's request to help him (Money) dispose of the body.  Appellant offered the testimony of two character witnesses.

Trial Court Opinion, filed 10/16/17, at 1-3.

As noted, above, a jury convicted Appellant of first-degree murder and related charges, and the trial court imposed a mandatory sentence of life imprisonment on the same day. This appeal, *nunc pro tunc*,[1] follows.

Appellant presents the following questions for our review:

I. **DID THE TRIAL COURT ERR IN ALLOWING SAKINAH WYATT TO TESTIFY THAT SHE HAD PREVIOUSLY SEEN APPELLANT IN POSSESSION OF A FIREARM WHEN THERE WERE NO SIMILARITIES IN THE FIREARM DESCRIBED WHEN COMPARED TO THE FIREARM USED TO SHOOT DECEDENT [HALL], WHEN PRIOR POSSESSION OF A FIREARM HAD NO PROBATIVE VALUE, AND WHEN THIS TESTIMONY CAUSED IRREPERABLE HARM TO APPELLANT BY EFFECTIVELY PORTRAYING HIM AS A VIOLENT, HABITUAL GUN-CARRYING INDIVIDUAL?**

II. **WAS THERE INSUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR MURDER IN THE FIRST DEGREE BECAUSE WHEN DECEDENT [HALL] WAS SHOT AND KILLED, APPELLANT WAS UNDER THE IMPRESSION THAT SAKINAH WYATT HAD JUST HAD SEXUAL RELATIONS WITH DECEDENT[,] AND APPELANT AND MS. WYATT WERE IN A RELATIONSHIP OF SORTS?**

III. **DID THE TRIAL COURT ERR IN PRECLUDING TRIAL COUNSEL FROM ASKING SAKINAH WYATT IF SHE HAD LIED UNDER OATH WHEN MS. WYATT STATED THAT SHE WAS SCARED TO TELL THE TRUTH AS THIS WAS NOT EXCLUSIVELY JURY QUESTION [SIC] AND MS. WYATT COULD HAVE TESTIFIED IF SHE INTENTIONALLY LIED UNDER OATH?**

---

[1] Appellant's direct appellate rights were reinstated *nunc pro tunc* after the court granted his petition for such collateral relief.

- 3 -

**IV. DID THE TRIAL COURT ERR IN PRECLUDING TRIAL COUNSEL FROM ASKING SAKINAH WYATT IF THERE WAS ANYONE WHO COULD CORROBORATE HER WHEREABOUTS AND OTHER ASPECTS OF HER TESTIMONY?**

**V. DID THE TRIAL COURT ERR IN QUASHING A SUBPOENA FOR ADA ERIC STRYD WHEN HE WAS RESPONSIBLE FOR ADMISSIONS TO DRUG TREATMENT COURT, SAKINAH WYATT TESTIFIED THAT SHE WAS ADMITTED TO THIS PROGRAM DESPITE NOT HAVING A DRUGS [SIC] PROBLEM, AND APPELLANT WAS DENIED THE OPPORTUNITY TO FULLY TEST MS. WYATT'S CREDIBILITY AS A RESULT?**

Appellant's brief, at 4-5.

In his first issue, Appellant argues the court erred when it granted the Commonwealth's motion *in limine* seeking permission to ask Sakinah Wyatt if she had ever seen him with a gun before the incident in question. N.T., 1/5/16, at 25. Appellant does concede evidence of prior gun possession may be admissible to show, *inter alia*, that a defendant has access to firearms, ***see Commonwealth v. Stokes***, 78 A.3d 644, 656 (Pa.Super. 2013), but he nevertheless says that a Pa.R.E. 404 balancing of the evidence at issue shows its prejudicial effect outweighed its probative value. Specifically, evidence of prior possession suggested he was a "gun toting aggressor" inclined toward violence, Appellant maintains, and it supported the notion that he acted not under a sudden, uncontrollable passion but, instead, with requisite intent. Appellant's brief, at 9-10.

Appellant's argument is flawed in two respects. First, although the court did permit the Commonwealth to ask Ms. Wyatt if she had previously seen

Appellant in possession of a firearm, Ms. Wyatt's answer benefitted Appellant. Specifically, Ms. Wyatt testified that the night of the shooting was the first time she had ever seen Appellant with a gun. N.T. 1/6/16, at 94. Therefore, as no prejudice befell Appellant from the Commonwealth's question, Appellant's Rule 404(b) argument is baseless.

Moreover, Appellant's prejudice argument is disconnected from the defense he presented at trial, which was to offer a complete denial of having shot Mr. Hall. As such, Appellant's claim that the question of his prior gun possession could have adversely affected a heat of passion defense is purely academic and irrelevant where Appellant offered no such defense. Appellant's first issue, therefore, fails.

In his next issue, Appellant challenges the sufficiency of evidence of first-degree murder where he claims the evidence showing he acted under the influence of a sudden, intense, and jealousy-fueled passion proved, at most, voluntary manslaughter.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Ortiz*, 160 A.3d 230, 233–34 (Pa. Super. 2017) (quoting

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal

citations omitted)).

> Murder of the first degree is an "intentional killing," which is defined, in part, as a "willful, deliberate, and premeditated killing." 18 Pa.C.S. § 2502(a), (d). However, "if at the time of the killing [the defendant] is acting under a sudden and intense passion resulting from serious provocation[,]" the defendant is guilty of voluntary manslaughter. 18 Pa.C.S. § 2503(a). In both crimes, the actor commits the act with the intent to kill. However, the difference between first-degree murder and voluntary manslaughter is whether the actor committed the killings under a "sudden and intense passion resulting from serious provocation." This Court has defined "passion" as:
>
> > [A]nger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected.... Passion, as used in a charge defining manslaughter ... means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection....

*Commonwealth v. Laich*, 777 A.2d 1057, 1061 (Pa. 2001) (quoting

*Commonwealth v. McCusker*, 292 A.2d 286, 289 n. 4 (Pa. 1972)).

The evidence at Appellant's trial was sufficient to establish that

Appellant shot Mr. Hall with malice and the specific intent to kill, which are

requisite elements to a first-degree murder conviction. Specific intent to kill

can be inferred from the use of a deadly weapon upon a vital part of the

victim's body. *Commonwealth v. Moore*, 937 A.2d 1062, 1067 (Pa. 2007)

(citations omitted).

In **Moore**, the Supreme Court found the evidence was sufficient to support the first-degree murder conviction. **Id**. The Court opined:

> The manner in which the victim was killed (two gunshot wounds to his back, one of which penetrated his heart) constitutes circumstantial evidence of malice and specific intent to kill on [the defendant's] part, and various aspects of subsequent conduct on [his] part, including his flight ... evidence his consciousness of guilt.

**Id**. (emphasis added). Furthermore, "[t]he law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second." **Commonwealth v. Jordan**, 65 A.3d 318, 323 (Pa. 2013).

Appellant maintains that he shot Mr. Hall in a sudden fit of rage, but evidence admitted at trial contradicts this position. Initially, we note our jurisprudence recognizes the passion defense to first-degree murder when the passion is in response to "serious provocation." **See Laich**, **supra**. Here, Ms. Wyatt testified Mr. Hall was merely present in her home as an invited guest when Appellant shot him multiple times. Viewed in a light most favorable to the Commonwealth as verdict winner, the evidence of Mr. Hall's mere presence did not constitute serious provocation for purposes of the heat of passion defense to first-degree murder.

Furthermore, testimony described how Appellant pointed the gun at both Ms. Wyatt and Mr. Hall before he fired multiple times, but he chose to single out Mr. Hall as his victim while sparing Ms. Wyatt's life. The jury reasonably could have construed Appellant's election in this regard as

deliberative and premeditated. Accordingly, we discern no merit to Appellant's sufficiency claim.

Next, Appellant argues that the trial court improperly limited cross-examination of Commonwealth witness, Sakinah Wyatt, when it precluded defense counsel from asking her if she lied under oath after she had stated she was scared to tell the truth. The record shows Appellant mischaracterizes the court's ruling in this regard.

> The trial court has broad discretion regarding "both the scope and permissible limits of cross-examination." **Commonwealth v. Briggs**, 608 Pa. 430, 12 A.3d 291, 335 (2011). "The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." **Id**.
>
> \*\*\*
>
> Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." **Van Arsdall**, 475 U.S. at 679, 106 S.Ct. 1431. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." **Delaware v. Fensterer**, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

**Commonwealth v. Rosser**, 135 A.3d 1077, 1087, 1088 (Pa.Super. 2016).

The trial court permitted Appellant to cross-examine Ms. Wyatt on whether she had been untruthful in one part of her previous day's testimony. Specifically, defense counsel asked Ms. Wyatt the following question:

> **DEFENSE COUNSEL:** But yesterday, on the issue of why you did not go into your home that afternoon, you were scared to tell the truth on yesterday; is that right?
>
> **MS. WYATT:** Yes.

N.T., 1/7/16, at 133.

Defense counsel then pressed the matter by asking Ms. Wyatt whether she "blatantly lied under oath?", "[was] untruthful before these jurors?", and "was less than candid?" Each question was met with a Commonwealth objection for repetitiveness, which the court sustained. We discern no abuse of discretion in the court's ruling sustaining the objections, for the follow-up questions were designed solely to elicit the same admission from Ms. Wyatt. As Ms. Wyatt had already admitted to testifying falsely in this regard because she feared retaliation from Appellant, the follow-up questions were repetitive and properly precluded.

In Appellant's fourth issue, he challenges the court's ruling sustaining objections to a similar line of questioning, where counsel attempted to ask Ms. Wyatt three questions on re-cross examination pertaining to her failure to corroborate her whereabouts in the aftermath of the shooting. The court, again, deemed the questions argumentative, and informed counsel he was free to impeach Ms. Wyatt's credibility in closing argument by arguing lack of corroboration to the jury if the Commonwealth failed to present corroborative evidence. We agree and, therefore, discern no abuse of discretion in the court's ruling.

Finally, Appellant charges error with the court's decision to quash a defense subpoena for the prosecutor responsible for admissions to Drug Treatment Court. Appellant sought the prosecutor to explain the criteria for acceptance into Drug Treatment Court as a means to impeach Ms. Wyatt's credibility as a witness. Specifically, during Ms. Wyatt's testimony on redirect examination, she denied having a drug problem despite the fact that the court granted her permission to enter Drug Treatment Court. N.T., 1/7/16, at 97-98. When asked to clarify the seeming contradiction, Ms. Wyatt testified she entered the program only to avoid a felony conviction. *Id*.

Appellant contends the prosecutor's testimony was necessary to impeach Ms. Wyatt's credibility and to demonstrate Ms. Wyatt's motive to cooperate with the District Attorney's Office. The court, however, opines, that Ms. Wyatt's admission already placed her credibility into question, as she admitted she lied on an application in order to avoid a felony conviction.

Our review of the record belies the crux of Appellant's claim, for it shows the court indicated it was "willing to give defense counsel the opportunity to present what he says he needs to and what I think is fair[]" with respect to presenting impeachment evidence on this issue. N.T. 1/12/16 at 132. In that regard, the court was referring to defense counsel's concomitant request to admit into evidence the Philadelphia Drug Treatment Court's website, which contained all the court's criteria, directives, rules, and regulations regarding entry into the program. *Id*. "So, if [defense counsel] wants to present that

as part of his case, I'll permit it. Otherwise, I'm just going to have one of the DAs come in [and testify]." *Id*.

The prosecution ceded to the court's suggestion, and, critically, defense counsel offered no objection to the court's determination that the Drug Treatment Court website and the subpoenaed prosecutor's testimony would be of equal impeachment value and were, thus, interchangeable. *Id*.[2] The court, therefore, quashed the defense subpoena only because it permitted Appellant to introduce the Drug Treatment Court's website as a functionally equivalent source of proof that the program admitted only those with drug abuse problems, contrary to Ms. Wyatt's testimony.

The record, therefore, belies Appellant's claim that the court ultimately quashed the defense subpoena over defense counsel's objection. Instead, prior to the court's ruling, defense counsel proposed the use of the Drug Treatment Court's website to accomplish the intended purpose of impeachment, and the court indicated its intention to give defense counsel what it requested. We also fail to see where, during the extensive discussion on the issue, defense counsel argued that the prosecutor's testimony was relevant to show Ms. Wyatt's motivation to cooperate with the DA's Office, as

_____

[2] We may conclude, therefore, that Appellant has waived this issue for review, as "the failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." **Commonwealth v. Tucker**, 143 A.3d 955, 961 (Pa.Super. 2016). Even if we did not deem this issue waived, we would find it unsupported by the record, as we observe herein.

J-S33036-18

Appellant now argues in his brief. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

For these reasons, we reject Appellant's fifth and final claim.

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/18

- 12 -