J-S60022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMOND TORRES, JR. | |
| Appellant | No. 306 MDA 2019 |

Appeal from the Judgment of Sentence entered December 27, 2018
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0001083-2018

BEFORE:  SHOGAN, STABILE, and PELLEGRINI,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 14, 2020**

Appellant, Raymond Torres, Jr., appeals from the judgment of sentence entered on December 27, 2018 in the Court of Common Pleas of York County following his conviction of criminal homicide and firearms not to be carried without a license.[1]  Appellant presents evidentiary challenges to two trial court rulings.  Upon review, we affirm.

Appellant offers the following brief factual summary, which we repeat here for context.

> The charges [against Appellant] arose out of an incident where the victim, Austin Peters, was found lying in front of 716 First Street, Lancaster with gun shot[] wounds to his upper torso and neck.  He was transported to the hospital where he was pronounced dead.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2501(a) and 6106(a)(1).

A jury trial was held [] December 17, 2018 through December 20, 2018. Evidence at trial showed that [Appellant] and the victim attended a party together on December 9, 2017. Later that same evening, both men were seen at the scene of a fire together. Video evidence was presented by the Commonwealth to the jury that pertained to a shots fired incident in the 200 block of Coral Street around 12:30 a.m. December 10, 2017. Two males can be seen in the video in that area as well as a brief muzzle flash. Detective Sergeant Nickel identified the male appearing in the video wearing a black pea coat with snow on the right shoulder as [Appellant] and the male with red pants and a black puffy coat with a gray hood as the victim using surveillance footage from inside the Gas Mart from a few moments later. A second shots fired incident was then received by police and Detective Ginder responded and found the victim lying the 700 block of First Street with gun shot wounds.

Appellant's Brief at 7-8 (references to trial transcript omitted).

On December 20, 2018, at the conclusion of his jury trial, Appellant was found guilty of the aforementioned offenses. On December 27, 2018, the trial court sentenced Appellant to life in prison without possibility of parole for the homicide conviction, with a consecutive sentence of not less than three and a half nor more than seven years in prison for the firearms violation. Appellant filed post-sentence motions that were denied by order entered January 14, 2019. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider two issues:

I. Did the trial court err in admitting Commonwealth exhibit 22 as a prior inconsistent statement where the witness testified at trial that he didn't know anything about a gun, and the purported prior inconsistent statement offered by the Commonwealth did not mention a gun?

II. Did the trial court err in barring defense from introducing evidence of the victim being previously charged in a shots fired incident where the evidence was not hearsay and was admissible for the purpose of demonstrating what information the Detective was aware of and how that information directed the course of his investigation?

Appellant's Brief at 6.

Appellant's issues present challenges to two of the trial court's evidentiary rulings. As our Supreme Court reiterated in **Commonwealth v. Jacoby**, 170 A.3d 1065 (Pa. 2017):

> Appellate courts review evidentiary decisions for an abuse of discretion. **Commonwealth v. Walker**, 625 Pa. 450, 92 A.3d 766, 772 (2014) (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." **Id.** at 772–73 (internal quotation marks and citations omitted).

**Id.** at 1090.

Appellant's first evidentiary challenge stems from the trial court's admission of Commonwealth Exhibit 22 as a prior inconsistent statement. Pennsylvania Rule of Evidence 613(a) provides:

> **(a) Witness's Prior Inconsistent Statement to Impeach.** A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

Pa.R.E. 613(a). "A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements

inconsistent with his trial testimony." ***McManamon v. Washko***, 906 A.2d 1259, 1268 (Pa. Super. 2006) (quoting ***Commonwealth v. Bailey***, 469 A.2d 603, 611 (Pa. Super. 1983)). "Mere dissimilarities or omissions in prior statements . . . do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements." ***Id.***

At issue here is Exhibit 22, a recorded telephone conversation between Commonwealth witness Ryan Mahler and his friend, Devante Madison, that took place on December 17, 2017 when Mahler was in the York County Prison. Notes of Testimony ("N.T."), Trial, at 383. The trial court permitted the prosecution to treat Mahler as an adverse witness. In the recorded conversation, Mahler talked about Appellant being arrested and told Madison that he had to get rid of the "jaunt," which the Commonwealth contends was a reference to the murder weapon that Appellant gave to Mahler following the shooting. ***Id.*** At trial, Mahler testified that "[j]aunt means anything," and said he was referring to marijuana when he used the term in his conversation with Madison. In contrast, however, Detective Nickel, the prosecuting detective, testified that jaunt is "slang for a firearm." ***Id.*** at 389; 540. The trial court permitted introduction of the exhibit as a prior inconsistent statement in light of Mahler's previous statement to police that he knew nothing about a gun. ***Id.*** at 380.

Appellant's counsel objected to admission of the exhibit—and the playing of the recording to the jury—claiming it was not "established the jaunt is a gun, which is what you need to [] impeach a witness." *Id.* at 384-85. The trial court ultimately allowed admission of the exhibit and explained:

> Upon consideration, of the totality of the context and circumstances surrounding the discussion between Mr. Mahler and Mr. Madison, it is clear that the term [jaunt] *sic* may likely be jargon for a firearm. Mr. Mahler referenced [Appellant] getting locked up for his homicide and Mr. Mahler then immediately directed Mr. Madison to get rid of the [jaunt] that was hidden in Mr. Madison's kitchen. Acceptance of the argument presently advanced by [Appellant] would serve to shield participants in criminal enterprises with liability from any inculpatory statements that they choose to make so long as they choose to speak in jargon, as opposed to formal English. The court properly admitted the recorded telephone conversation between Mr. Mahler and Mr. Madison, which was marked as Commonwealth exhibit 22, as a prior inconstant statement which was used by the Commonwealth to impeach Mr. Mahler's testimony that he did not know anything about a gun.

Trial Court Opinion, 5/15/19, at 9.

Again, we review evidentiary decisions for an abuse of discretion. *Jacoby*, 170 A.3d at 1090. We find no abuse of discretion in the trial court's admission of Exhibit 22. Therefore, Appellant's first issue fails.

Appellant next challenges the trial court's exclusion of evidence that the victim in this case was previously charged in an October 2017 shots fired incident involving an individual named Fuentes, the then-current boyfriend of Appellant's ex-girlfriend. The defense sought to cross-examine Detective Sergeant Nickels about two separate reports written by other officers following an interview with a woman named Cindel Peters. The suggestion was that

- 5 -

Fuentes had both motive and opportunity to harm the victim. The trial court determined that the evidence was properly excluded as hearsay.

As the trial court explained, Rules 801 and 802 of the Pennsylvania Rules of evidence define hearsay and generally direct that hearsay is not admissible except as provided by the Rules of Evidence. Trial Court Opinion, 5/15/19, at 10. "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." **Id.** (citing **Commonwealth v. Charlton**, 902 A.2d 554, 559 (Pa. Super. 2006)). "An out-of-court declaration containing another out-of-court declaration is double hearsay." **Commonwealth v. Laich**, 777 A.2d 1057, 1060 (Pa. 2001) (quoting **Commonwealth v. Chmiel**, 738 A.2d 406, 417 (Pa. 1999)). "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. This requirement is satisfied when each statement comes within an exception to the hearsay rule." **Id.** (citation omitted). "A police report containing statements from persons who witnessed an incident is double hearsay and, therefore, is only admissible if there is a separate hearsay exception for each statement in the chain." Trial Court Opionion, 5/15/19, at 11 (citing **Commonwealth v. May**, 898 A.2d 559, 566 (Pa. 2006)).

Appellant contends he was not attempting to elicit hearsay from Detective Sergeant Nickels. Rather, he simply wanted to determine whether Detective Sergeant Nickels was aware of the victim's prior charges.

Appellant's Brief at 28. If so, the line of questioning would focus "on how that information played into the investigation or what he did, if anything as a result of knowing about those charges." *Id.* at 29.

The Commonwealth counters that the defense was not barred from exploring whether Detective Sergeant Nickels interviewed other suspects, including Fuentes, in the course of his investigation. "However, the line of questions pursued by [the defense] attempted to elicit out-of-court statements of Ms. Peters to circumvent having to call unfavorable witnesses. Nothing in the trial court's ruling barred [Appellant] from bringing in the appropriate witnesses to testify to the shots-fired incident if it would have been deemed to be relevant." Commonwealth Brief, at 20-21.

The trial court explained:

In this matter, the trial court not abuse its discretion by excluding the reports of [the officers] regarding their interview with Cindel Peters. Said reports included multiple levels of hearsay, namely, the statements of Cindel Peters to the officers and the officer[s'] subsequent recitation of the information they received from Cindel Peters. [Appellant] did not produce either officer or Cindel Peters to testify at trial. [Appellant] sought to introduce the statements of Cindel Peters to the officers, which [were] contained in the officer[s'] reports to prove the truth of the matter asserted, that is that there was another individual who had a possible motive to have committed the instant homicide. Specifically, Cindel Peters made the officers [] aware of an incident in October of 2017 where the Victim was charged with four counts of simple assault and a count of discharging a firearm in public after he shot a firearm in the direction of a vehicle that contained his ex-girlfriend and her current boyfriend. Defense counsel's original argument is that this information was relevant to show there was animosity between the Victim and his ex-girlfriend and her current boyfriend. Despite defense counsel's relevancy argument, which the trial court properly deferred ruling upon in the event defense counsel

produced the proper witnesses, such a statement does not fall within any exception to the rule against hearsay. Accordingly, the trial court properly excluded the reports of [the officers].

Trial Court Opinion, 5/15/19, at 17. While concluding there was no error in its ruling, the trial court went on to explain that any error in excluding the evidence must be considered harmless in light of the overwhelming evidence of Appellant's guilt. *Id.* at 17-21. "Any prejudicial effect of the purported error not to allow the defense to introduce evidence of the Victim being previously involved in a shots fired incident was so insignificant by comparison that any alleged error could not have contributed to the verdict." *Id.* at 21.

Mindful of our standard of review, we conclude the trial court did not abuse its discretion in excluding the evidence at issue. Therefore, we shall not disturb its ruling.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/14/2020