J-S45041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CURTIS CRAIG MORRIS | : | |
| | : | |
| Appellant | : | No. 552 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 22, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003529-2021

BEFORE: BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: JANUARY 26, 2024**

Appellant Curtis Craig Morris appeals the judgment of sentence entered by the Court of Common Pleas of Berks County after a jury convicted Appellant of accidents involving death or personal injury, accidents involving death or personal injury while not properly licensed, accidents involving damage to attended vehicle or property, driving while operating privilege is suspended or revoked, careless driving, duty to give information and render aid, immediate notice of accident to police department, and abandonment of vehicles. After careful review, we affirm.

Appellant was charged with these offenses in connection with a multi-vehicle accident that occurred on June 27, 2019, at approximately 4:30 p.m. in Spring Township, Berks County. At Appellant's jury trial, Sharon Bedell

_____

[*] Former Justice specially assigned to the Superior Court.

testified that on the afternoon of June 27, 2019, she was stopped in her vehicle past the intersection of Revere Boulevard and Cloister Court at rush hour in "stop and go" traffic. Notes of Testimony (N.T.), 12/12/22 – 12/14/22, at 106.

Suddenly, after Bedell heard a loud screeching of breaks, her vehicle was struck from behind and pushed into the car in front of her. N.T. at 106-107. Bedell was left dazed from the impact of the collision, which caused her airbags to deploy and her shoe to be knocked off. N.T. at 107. Bedell attempted to call her spouse to inform her that Bedell would be at the hospital as she felt her injuries would require hospitalization as "everything from the waist down hurt" and she was in "severe pain." N.T. at 107-109.

Bedell recalled that a white male with light brown hair approached her driver's side window after the accident occurred. N.T. at 108. As the man had blood running down his face, Bedell thought he must have been involved in the accident. The man asked Bedell if she was okay and Bedell stated she was "hurt bad." N.T. at 108. Bedell never saw that man again. N.T. at 113.

Bedell was pulled out of her vehicle by unidentified bystanders, who stayed with her until the ambulance arrived. N.T. at 112. Bedell was transported to the hospital after the accident and testified that she sustained injuries to her leg and foot, which persisted for months and required the use of crutches and a cane. N.T. at 111-12.

Spring Township Police Officer Brian Heere responded to the scene of the accident, which Officer Heere classified as a rear-end collision that involved three or four vehicles. N.T. at 124-26. However, Officer Heere was

unable to find the driver of the white Ford Focus that had started the chain reaction accident. N.T. at 128. While looking into the Ford Focus, Officer Heere saw blood on the windshield and driver's door of the vehicle and observed personal belongings in the back seat. N.T. at 131-32. As the vehicle was "extremely damaged," the police secured the vehicle, did not search it, and arranged for Spitler's Towing to tow the car from the roadway. N.T. at 131.

After running the license plate through PennDOT, Officer Heere discovered the vehicle was owned by a female named Cameo Morris. N.T. at 129-30. While Officer Heere testified that he contacted Ms. Morris and spoke with her, Ms. Morris never came to claim the vehicle. N.T. at 134. Officer Heere admitted that he did not file an application for a search warrant for the vehicle. N.T. at 150. Officer Heere retired in January 2020, six months after the accident occurred. N.T. at 133.

Donald Spitler, one of the owners of Spitler's Towing, testified that he towed a Ford Focus from the accident scene on June 27, 2019 and placed in a storage yard, where it was locked and secured. N.T. at 159-63. Spitler indicated that no one was allowed to enter the vehicle as there was a police hold on the vehicle. N.T. at 165. Spitler testified that the car sat in their storage yard for eighteen months before Spitler filed abandonment paperwork with PennDOT to obtain a nonrepairable vehicle certificate and ownership of the vehicle. N.T. at 162-69.

Spring Township Officer David Church was assigned to investigate the accident in 2020, approximately eighteen months after the accident occurred.

N.T. at 195-96. Officer Church prepared a search warrant application which was denied by the magisterial district judge, who had highlighted the delay in the filing of the warrant request. N.T. at 197, 244-45.

Upon learning Spitler's Towing had been granted possession and ownership of the vehicle, Officer Church sought and received Spitler's consent to search the vehicle on January 28, 2021. N.T. at 170, 198. In searching the Ford Focus, officers recovered a backpack containing men's clothing and three prescription pill bottles in the name of Appellant Curtis Morris, who was identified as the son of the vehicle's owner, Cameo Morris. N.T. at 205, 208, 212. Officers also recovered medical appointment paperwork for Curtis C. Morris. N.T. at 239.

The officers photographed the vehicle which had sustained considerable front-end damage to the hood, windows, and windshield. N.T. at 200-203. Officers discovered a crack in the front windshield on the driver's side of the vehicle along with hair fibers embedded into the windshield. N.T. at 218, 222-23. Officer Church noted that the crash had caused the deployment of the driver's airbag which was covered in spots that were visually consistent with blood droplets. N.T. at 214-217. There were similar spots on the doorsill of the vehicle which were visually consistent with blood. N.T. at 221. Officers removed the deployed airbag and placed it into evidence along with samples of the suspected blood. N.T. at 223-27. These items were sent to the Pennsylvania State Police (PSP) laboratory for testing. N.T. at 230, 237.

The Commonwealth offered the expert testimony of Michelle Lambert, Laboratory System Quality Specialist for the serology department of the PSP Bureau of Forensic Services. N.T. at 288-94. Lambert determined that the airbag and the swabs from the driver's door and doorframe contained traces of blood. N.T. at 299, 302. Lambert then sent the samples for further testing at the PSP DNA laboratory. N.T. at 301-304.

The prosecution also presented the expert testimony of Timothy Gavel, Forensic DNA Scientist for the PSP DNA Laboratory in Greensburg, Pennsylvania. N.T. at 336. Gavel tested the samples and compared them with Appellant's DNA sample, finding the blood on the airbag and the driver's door were an exact match to Appellant's DNA. N.T. at 351-54.

The defense offered the testimony of Appellant's mother, Cameo Morris, who admitted the vehicle that caused the accident was registered in her name. N.T. at 391. Mrs. Morris allowed Appellant to borrow her car with the condition that he would not be the individual driving it. N.T. at 389. While Mrs. Morris gave Appellant the keys to her vehicle on June 27, 2019, she claimed that another individual drove Appellant to work in her vehicle. N.T. at 389. Mrs. Morris admitted she did not see Appellant until ten days after the accident. N.T. at 389. Mrs. Morris never reported to the police that her car was in an accident. N.T. at 395.

Appellant testified in his own defense, indicating that an individual named "Brian" drove him on the day in question in Appellant's mom's car. N.T. at 407. Appellant claimed that Brian dropped him off at his girlfriend's

house and had agreed to come back to take Appellant to work in exchange for Brian having the opportunity to use the car. N.T. at 407. However, Appellant claimed Brian never picked him up on the day of the accident. N.T. at 408. Appellant denied driving his mother's vehicle. N.T. at 408. The parties stipulated that at the time of the accident, Appellant's driver's license was suspended. N.T. at 285.

At the conclusion of Appellant's trial, on December 4, 2022, the jury convicted Appellant of the aforementioned offenses. On December 22, 2022, the trial court sentenced Appellant to an aggregate term of three to twenty-three months' incarceration plus fines and restitution.

On January 6, 2023, Appellant requested to file a post-sentence motion *nunc pro tunc*. On January 10, 2023, the trial court expressly granted this request and scheduled a hearing on the post-sentence motion. After the hearing was held, the trial court denied Appellant's post-sentence motion on March 14, 2023. Appellant filed a timely notice of appeal on April 10, 2023 and subsequently complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[1]

---

[1] A notice of appeal must be filed within thirty days of the entry of the order being appealed. **See** Pa.R.A.P. 903(a). If the defendant files a timely-post sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. **See** Pa.R.Crim.P. 720(A)(2)(a). If a a defendant files a separate and distinct request to file a post-sentence motion *nunc pro tunc* within 30 days of the imposition of sentence and the trial court expressly permits the filing of the requested motion within the same thirty day-period, the post-sentence motion *nunc pro tunc* will toll the appeal period. *(Footnote Continued Next Page)*

Appellant raises the following issues for our review on appeal:

1. The evidence presented at trial was insufficient to establish beyond a reasonable doubt the elements of the following crimes:

   a. Accidents Involving Death or Personal Injury, Accidents Involving Death or Personal Injury while Not Properly Licensed, Accidents Involving Damage to Attended Vehicle or Property, Driving While Operating Privilege is Suspended or Revoked, Careless Driving, Duty to Give Information and Render Aid, Immediate Notice of Accident to Police Department (two counts), and Abandonment of Vehicles.

   b. The verdict was based on speculative and conflicting testimony; and there was no evidence beyond a reasonable doubt that [Appellant] was the driver of the car.

   c. With respect to the crimes of Accidents Involving Death or Personal Injury While Not Properly Licensed and Careless Driving, the verdict was based on speculative and conflicting testimony to establish [Appellant] acted with criminal negligence.

   d. Finally for the offense of Abandonment of Vehicles, there was no evidence that [Appellant] left the car on the highway for more than 48 hours.

2. The verdict of guilty to all charges of the above-captioned docket is contrary to the weight of the evidence presented at trial; the verdict was based on speculative and conflicting testimony that [Appellant] drove the car on the date in question.

   a. The verdict of guilty, specifically with respect to, Accidents Involving Death or Personal Injury While Not Properly Licensed and Careless Driving, is contrary to the

_____

***Commonwealth v. Capaldi***, 112 A.3d 1242, 1244 (Pa.Super. 2015) (citations omitted). As the trial court granted Appellant's request to file a post-sentence motion *nunc pro tunc* within thirty days of the imposition of sentence, the appeal period was tolled.

weight of the evidence presented at trial; that the verdict was based on speculative and conflicting testimony to establish [Appellant] acted with criminal negligence.

b. For Abandonment of Vehicle, the verdict was not based on evidence that [Appellant] left the car on the highway for more than 48 hours.

c. The verdict shocks the conscience of the Court.

3. That the Court abused its discretion in permitting the Commonwealth's DNA expert to testify about the statistical probabilities and its relation to the human population of the Earth; which led to confusion among the jurors and was not harmless error.

Appellant's 1925(b) statement, at 1-3.

In his first claim, Appellant challenges the sufficiency of the evidence supporting his convictions. Our standard of review is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336–37 (Pa.Super. 2019).

Appellant's sufficiency challenge is based on three specific arguments. First, Appellant claims the evidence is insufficient to sustain all of his convictions as the Commonwealth failed to prove that Appellant was the driver of the vehicle that caused the accident.

While it is undisputed that the driver of the vehicle that caused the accident left the scene after the accident and was not identified by any of the parties involved in the accident, circumstantial evidence would allow the jury to infer that Appellant was the driver of that vehicle.

The vehicle that caused the accident in question was registered to Appellant's mother, who testified that she allowed other people to use her car to take Appellant to work and allowed Appellant to use the car on the day of the accident. Appellant's personal items, including prescription medication bottles, were found in the vehicle. Forensic testing revealed Appellant's blood on the driver's side door and the driver's side airbag which was deployed as a result of the accident and would have had contact with the individual driving the vehicle at the time of the accident. As such, there was sufficient evidence to prove that Appellant was driving the car that caused the multi-vehicle crash.

Appellant also raises an alternative sufficiency challenge to his convictions for Accidents Involving Death or Personal Injury While Not Properly Licensed and Careless Driving. Appellant reasons that if this Court finds there was sufficient evidence to prove Appellant was the driver of the

vehicle that caused the accident, Appellant alleges that the prosecution failed to show he acted with criminal negligence.

The crime of Accidents Involving Death or Personal Injury While Not Properly Licensed is defined as follows:

> A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license and applicable endorsements for the type and class of vehicle being operated commits an offense under this section if the person was the driver of any vehicle and:
>
> (1) caused an accident resulting in injury or death of a person; or
>
> (2) acted with negligence that contributed to causing the accident resulting in injury or death of a person.

75 Pa.C.S.A. § 3742.1. In this case, Appellant was convicted pursuant to Section 3742.1(a)(1) for causing an accident resulting in injury to a person.

In **Commonwealth v. Hurst**, 889 A.2d 624 (Pa.Super. 2005), the defendant was convicted of a violation of a previous version of Section 3742.1 that contains similar language.[2] While this Court recognized that Section 3742.1 did not contain an expressly defined *mens rea* requirement, this Court determined that the offense defined within was not a strict liability crime. This Court explained that "[t]he nature of the offense, which involves a causation element, and the potentially severe penalty are sufficient *indicia* that the

---

[2] The Pennsylvania Legislature amended Section 3742.1(a) to create two alternative bases for criminal liability. Section 3742.1(a)(1) contains the language of the former statute for individuals that "caused an accident resulting in injury or death of a person," while Section 3742.1(a)(2) adds criminal liability for individuals who "acted with negligence that contributed to causing the accident resulting in injury or death of a person." This amendment became effective on December 24, 2018.

legislature did not intend to eliminate the *mens rea* element and make accidents involving death or personal injury while a driver is not properly licensed a strict liability crime." ***Id***. at 626.

After evaluating the general requirements of culpability, this Court determined that "criminal negligence as defined in 18 Pa.C.S.A. § 302(b)(4) is the minimum level of culpability the Commonwealth [must] establish at trial" to sustain a conviction under Section 3742.1 of the Vehicle Code. ***Id***. at 629. Criminal negligence is defined as follows:

> [a] person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4).

As noted above, the Commonwealth presented sufficient evidence that Appellant was the driver of the Ford Focus that caused the accident. The prosecution presented undisputed testimony that Sharon Bedell's vehicle was stopped in traffic when she was struck from behind by Appellant's vehicle that decelerated rapidly and produced a loud screeching sound from its brakes. The impact of the collision was significant as both vehicles' airbags deployed as a result of the collision and Appellant's vehicle was "extremely damaged" and unable to be driven from the scene.

Despite the fact that Appellant caused an accident that resulted in injury to other drivers, Appellant abandoned the vehicle he was driving on the roadway and fled the scene before anyone could identify him or ascertain that he was driving on a suspended license. Appellant's mother admitted that she did not see Appellant for ten days after the accident in which Appellant smashed her car and left it in an undriveable state in the middle of a roadway.

This Court has held that "[w]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred." **Commonwealth v. Clark**, 599 Pa. 204, 224, 961 A.2d 80, 92 (2008) (quoting **Commonwealth v. Rios**, 546 Pa. 271, 684 A.2d 1025, 1035 (1996) (quoting **Commonwealth v. Coyle**, 415 Pa. 379, 203 A.2d 782, 789 (1964))).

Based on our review of the evidence presented at trial, there was sufficient evidence for the jury to conclude that Appellant was criminally negligent. While traffic was moving a slow rate due to the rush hour commute, Appellant slammed his breaks as he approached the congested area, ran into the back of a vehicle sitting motionless in traffic, and caused an accident resulting in severe damage. Appellant's consciousness of guilt caused him to flee the scene and abandon his mother's car in the middle of a roadway instead of waiting to be identified by police. As such, this sufficiency challenge fails.

Appellant also claims that there was insufficient evidence to support his conviction for Abandonment of Vehicles pursuant to 75 Pa.C.S.A 3712.

Specifically, Appellant claims that, in order to sustain a conviction under Section 3712, the prosecution must prove that the vehicle remained on a highway for more than 48 hours. We disagree.

Section 3712 provides that "[n]o person shall abandon a vehicle upon any highway." The Vehicle Code defines "abandoned vehicle" as follows:

> A vehicle (other than a pedalcycle) shall be presumed to be abandoned under any of the following circumstances, but the presumption is rebuttable by a preponderance of the evidence:
>
> > (i) The vehicle is physically inoperable and is left unattended on a highway or other public property for more than 48 hours.
> >
> > (ii) The vehicle has remained illegally on a highway or other public property for a period of more than 48 hours.
> >
> > (iii) The vehicle is left unattended on or along a highway or other public property for more than 48 hours and does not bear all of the following:
> >
> > > (A) A valid registration plate.
> > >
> > > (B) A current certificate of inspection.
> > >
> > > (C) An ascertainable vehicle identification number.
> >
> > (iv) The vehicle has remained on private property without the consent of the owner or person in control of the property for more than 24 hours.
> >
> > (v) The vehicle has remained on the private property of a salvor for 20 days.

75 Pa.C.S.A. § 102.

Appellant argues that the prosecution did not show he abandoned his mother's vehicle for more than 48 hours as police secured the physically

inoperable vehicle from the roadway and towed it from the roadway less than 48 hours after the accident occurred.

We find this argument to be absurd as Appellant fails to acknowledge that Section 102 provides multiple bases upon which a vehicle can be determined to be abandoned including that the "vehicle has remained on the private property of a salvor for 20 days." 75 Pa.C.S.A. § 102.

In this case, it was necessary for the police to secure and tow the physically inoperable vehicle that Appellant had abandoned in the roadway as it was interfering with the normal movement of traffic. As noted above, the police arranged for Spitler's Towing to tow the vehicle from the roadway to their storage yard where the vehicle remained for eighteen months before Spitler's filed abandonment paperwork with PennDOT and obtained a nonrepairable vehicle certificate and ownership of the vehicle. As the vehicle remained on the private property of a salvor for well over twenty days, Appellant's sufficiency challenge has no merit.

Appellant also argues that the trial court abused its discretion in denying his challenge to the weight of the evidence supporting several of his convictions. Our standard of review for challenges to the weight of the evidence is well-established:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the

trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017) (citations omitted).

In his appellate brief, Appellant contends his convictions shocked the conscience as the evidence showed that he was not the driver of the vehicle. Appellant asks this Court to credit his testimony and his mother's testimony claiming that Appellant did not drive the vehicle on the day in question. Appellant emphasizes that no witnesses could identify him as the driver of the vehicle and no video of the accident was obtained. Appellant argues that his theory that his DNA was only in the vehicle due to his casual use of vehicle when other individuals would drive him as a passenger.

However, Appellant is the son of the registered owner of the vehicle that caused the multi-vehicle crash and Appellant's blood was discovered on the driver's side door and the driver's side airbag that deployed only as a result of the crash. While Appellant would have this Court accept his version of the events in question, we will not substitute our judgment for that of the jury as "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of

- 15 -

the witnesses." ***Commonwealth v. Dunkins***, 229 A.3d 622, 633 (Pa.Super. 2020) (quoting ***Commonwealth v. Johnson***, 668 A.2d 97, 101 (Pa. 1995)). Thus, we conclude that the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim.

Lastly, Appellant claims that the trial court abused its discretion in permitting the prosecution's DNA expert to testify about the statistical probabilities when he incorrectly stated the world population.

> "Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and this Court will not reverse the trial court's decision absent an abuse of that discretion." ***Commonwealth v. Laich***, 566 Pa. 19, 777 A.2d 1057, 1060 (2001); *see also* ***Commonwealth v. Smith***, 545 Pa. 487, 681 A.2d 1288, 1290 (1996) (explaining that "[d]iscretion is abused when the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will" (internal citation omitted)).

***Commonwealth v. Wallace***, 289 A.3d 894, 900 (Pa. 2023).

In this case, the trial court accepted Timothy Gavel as an expert in DNA analysis and DNA profiling. In his role as PSP Forensic DNA Scientist, Gavel opined that the blood samples found on the driver's side door and deployed airbag of the Ford Focus that caused the accident matched Appellant's DNA.

Gavel testified that the chance of the testing produced a coincidental match for the airbag blood sample was "approximately one in 450 nonillion from the Caucasian population[,] one in 2.4 undecillion from the African-American population, and one in 780 nonillion from the Hispanic population."

N.T. at 352. Gavel explained that a nonillion is a number with 30 zeros after it and an undecillion is a number with 36 zeros after it. N.T. at 352.

In discussing the probability of obtaining a coincidental match in the world population to the evidence in this case, Gavel stated that by way of reference that the world population was four billion people. At that point, Defense counsel made a general objection, but did not specify his grounds for such objection. The trial court immediately overruled the objection indicating that Gavel was testifying to the contents of his report.

Our courts have long held that "[i]t is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000). We note that defense counsel failed to preserve a specific objection at trial to Gavel's incorrect statement that the world population was four billion people. Defense counsel neither challenged the admissibility of Gavel's testimony nor asked for a new trial. As such, Appellant did not preserve this issue for our review on appeal.

Even assuming Gavel had properly objected at trial, he would not be entitled to relief. After Gavel had testified that the world population was four billion people, the prosecutor asked Gavel if the world population was actually eight billion people. Gavel conceded that he had not reviewed the world population recently, but did not find that fact to be key to his analysis. N.T. at 353. Gavel indicated he had brought up this number to attempt to allow the

jury to understand by way of comparison how small the chance was that the DNA match to Appellant was coincidental. N.T. at 353. Since a billion is a number with nine zeros, a nonillion is over three times the number of zeros and an undecillion is four times the number of zeros. N.T. at 353.

Thus, we agree with the trial court's finding that Gavel's statement was harmless error. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Passmore*, 857 A.2d 697, 711 (Pa.Super. 2004). "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000).

In this case, after Gavel incorrectly testified that the world population was four billion, the prosecution pointed this discrepancy out to its witness. Gavel was able to explain to the jury how this statement did not affect his opinion that Appellant's DNA was a match to the DNA found in the Ford Focus given the infinitesimal chance that it was coincidental. As we fail to see how Appellant was prejudiced by Gavel's testimony, his evidentiary challenge fails.

For the foregoing reasons, we affirm the judgment of sentence.

Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/26/2024</u>