J-A10011-25

2025 PA Super 115

| | | |
|---|---|---|
| KELLY HAGELAUER, ADMINISTRATRIX OF THE ESTATE OF STEPHAN PATRICE HAGELAUER | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 2064 EDA 2024 |
| MAIN LINE EMERGENCY MEDICINE ASSOCIATES, LLC, AND STUART BRILLIANT, M.D., MAIN LINE HOSPITALS, INC. D/B/A PAOLI HOSPITAL | : : : : : : | |

Appeal from the Judgment Entered July 12, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2018-13002-PL

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY PANELLA, P.J.E.:                    **FILED JUNE 2, 2025**

Kelly Hagelauer, administratrix of the estate of Stephan Patrice Hagelauer ("Mrs. Hagelauer"), appeals from the judgment entered in favor of Main Line Emergency Medicine Associates, LLC, and Stuart Brilliant, M.D., Main Line Hospitals, Inc. D/B/A Paoli Hospital ("Defendants" or "Appellees"). Specifically, Mrs. Hagelauer argues the trial court erred (1) in excluding an email which the decedent, Stephan Patrice Hagelauer ("Mr. Hagelauer"), sent prior to his death and (2) precluding use of an article written by Defendants'

_____

[*] Retired Senior Judge assigned to the Superior Court.

expert during cross-examination. Finding merit to Mrs. Hagelauer's second claim, we vacate the judgment and remand for a new trial.

The trial court set forth the relevant factual and procedural history:

[Mrs. Hagelauer] initiated this action by writ of summons filed December 17, 2018. The operative complaint was filed November 13, 2019. [Mrs. Hagelauer] claimed Defendants negligently failed to evaluate Mr. Hagelauer when he arrived by ambulance at the Paoli Hospital Emergency Department on April 28, 2018, after collapsing and briefly losing consciousness while playing tennis. Approximately four weeks later, on May 23, 2018, Mr. Hagelauer was again playing tennis when he collapsed and became unresponsive. Efforts to resuscitate Mr. Hagelauer were unsuccessful, and he was taken by ambulance to Chester County Hospital where he was pronounced dead having suffered cardiac arrest. [Mrs. Hagelauer] maintains that Dr. Brilliant and [Physician Assistant] Lunardi failed to meet the standard of care by failing to ensure Mr. Hagelauer was admitted to the hospital and evaluated by a cardiologist for his exertional syncope with follow-up testing, including an echocardiogram and stress testing.

Trial commenced on February 20, 2024. On February 29, 2024, the jury returned a verdict finding no negligence on the part of any Defendant.

Trial Court Opinion, 7/3/24, at 1-2.

Mrs. Hagelauer filed a post-trial motion seeking a new trial based upon two trial errors. First, Mrs. Hagelauer asserted the trial court erred in excluding an email written by Mr. Hagelauer wherein he provided his availability for a future tennis match and indicated a doctor cleared him to play "provided [he] drink and eat something before playing." Plaintiff's Motion for Post-Trial Relief, 3/11/24, Exhibit B. Second, Mrs. Hagelauer argued the trial court erred in precluding cross-examination of Defendants' expert, Dr. Ali Raja, regarding an article he authored. The trial court denied this motion on July 3, 2024, and

- 2 -

judgment was entered on July 12, 2024. Mrs. Hagelauer timely appealed. Mrs. Hagelauer complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Mrs. Hagelauer raises two claims for our review:

1. Did the trial court reversibly or prejudicially err in precluding [Mrs. Hagelauer] from introducing into evidence an email from decedent offered to rebut the testimony of Dr. Brilliant, because it determined said email to be inadmissible hearsay?

2. Did the trial court reversibly or prejudicially err in precluding [Mrs. Hagelauer] from conducting a full and fair cross-examination of the emergency medicine expert proffered by the Defendants, Ali Raja, M.D.?

Appellant's Brief, at 4 (trial court answers and suggested answers omitted).

Both issues concern the admissibility of evidence. "Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." *E.W. v. E.N.*, 327 A.3d 679, 691 (Pa. Super. 2024) (citation omitted).

An abuse of discretion requires more than finding an error of judgment or that this Court would have ruled differently; instead, discretion is abused if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record.

*Feldman v. CP Acquisitions 25, L.P.*, 325 A.3d 691, 713 (Pa. Super. 2024) (quotation marks, brackets, and citation omitted). Furthermore, "[i]t is well established that in order for a party to be awarded a new trial, the moving party must demonstrate that it was prejudiced by the alleged error of the trial

- 3 -

court." ***Boyle v. Independent Lift Truck, Inc.***, 6 A.3d 492, 496 (Pa. 2010) (citations omitted).

In her first issue, Mrs. Hagelauer argues the trial court erred in finding the email inadmissible as hearsay because it "was being offered to demonstrate [Mr. Hagelauer's] state of mind about his availability and ability to continue to play tennis." Appellant's Brief, at 57 (internal quotation marks and record citation omitted). Mrs. Hagelauer asserts the email either is admissible because it is not hearsay as it was not offered for the truth of the matter asserted, or alternatively, it meets the hearsay exception of a then-existing mental, emotional, or physical condition. ***See id.*** at 62-68.

Our Supreme Court recently addressed both state of mind non-hearsay and the then-existing mental, emotional, or physical condition hearsay exception in ***Commonwealth v. Fitzpatrick***, 255 A.3d 452 (Pa. 2021):

> Hearsay is "a statement … the declarant does not make while testifying at the current trial or hearing … that is offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c)(1)-(2). Statements that meet this definition are not admissible, unless the proffered statement falls within an established hearsay exception. …
>
> Before proceeding further, we first must distinguish between the two ways in which a declarant's state of mind can be invoked as a basis for admitting a declarant's out-of-court statement in a legal proceeding. The two often are conflated by courts and practitioners alike. The critical feature that differentiates the two evidentiary proffers is the purpose for which the statement is being offered. [First, i]f the statement is not being offered for its truth, but instead "to show the mental state of the person making" it, ***Commonwealth v. Auker***, … 681 A.2d 1305, 1319 ([Pa.] 1996), the statement is admissible only for that limited purpose, and should be accompanied with an accurate limiting instruction

to the jury. Such a statement is not admissible as substantive evidence, and cannot be admitted for the truth of the matter asserted.

\*\*\*

…[T]he second situation in which the invocation of a declarant's state of mind permits the admission of hearsay [is]: when the out-of-court statement is offered to prove the truth of the matter asserted. Technically, such a statement is hearsay. However, then-existing state of mind statements long have been excepted from the hearsay rule because they possess the "special assurance of reliability" due to "their spontaneity and resulting probable sincerity. The guarantee of reliability is assured principally by the requirement that the statements must relate to a condition of mind or emotion existing at the time of the statement." [2 McCormick on Evidence § 274 (8th ed.)] (footnotes omitted).

In Pennsylvania, the admissibility of then-existing state of mind statements is governed by Rule of Evidence 803(3), which provides as follows:

> **Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3). "Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate her state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception." [**Commonwealth v. Laich**, 777 A.2d 1057, 1060-61 (Pa. 2001)]. Axiomatically, and by its unambiguous terms, the exception renders admissible only those statements that reflect the "declarant's then-existing state of mind … or condition," Pa.R.E. 803(3), not someone else's state of mind or condition. Nothing in the plain terms of the exception would allow, for instance, a party to introduce an out-of-court statement of one person to prove intent, motive, feelings, pain, or health of another person. The

- 5 -

bounds of the exception are limited to the then-existing state of mind of the declarant only.

*Id.* at 471-72 (brackets, footnote, and some citations omitted).

Just like the statement in *Fitzpatrick*, the statement here is a "compound statement that both demonstrates the speaker's then-existing state of mind and, when offered for the truth of the matter asserted, proves a fact that, if considered on its own, would be inadmissible hearsay." *Id.* at 472. The email clearly showed Mr. Hagelauer felt he was healthy enough to play tennis, a statement of his then-existing physical condition. However, the statement also contained a factual assertion: that a doctor cleared him to play as long as he ate or drank something before playing.

The Court in *Fitzpatrick* found that these compound statements are inadmissible pursuant to the then-existing state of mind exception:

> Although basic state of mind statements generally are deemed reliable because of their strong indicia of reliability, the additional fact-based aspects of a compound state of mind expression are not inherently reliable and, conversely, implicate a high potential for incurable prejudice. Fact-bound assertions attached to state of mind statements lack the spontaneity and sincerity that characterize traditional state of mind statements.

*Id.* at 477 (citation omitted). "In other words, even when relevant to a contested issue in the case, a declarant's 'fact-bound' statement, when offered as substantive evidence, is inadmissible to prove … the fact … expressed in the statement." *Id.* at 478 (citation omitted).

Acknowledging that cases involving state of mind evidence have vexed the courts and practitioners due to inconsistent rulings in this "complex area

- 6 -

of evidentiary law[,]" the Court "set forth the general inquiry courts must undertake when contemplating the admissibility of out-of-court statements proffered to the court for admission as state of mind evidence." ***Id.*** at 479.

> First, the court must ascertain the reason that the moving party is offering the evidence. If it is not being offered for the truth of the matter asserted, it is not hearsay, and can be admitted to demonstrate the non-truth purpose. In a jury trial, the evidence should be admitted in conjunction with a limiting jury instruction to ensure that the jury considers the evidence solely to demonstrate the speaker's mindset at the time of the utterance, and not for the truth of the words spoken. For instance, if a declarant says "I had butterflies in my stomach," when offered for the non-truth purpose, the jury can consider the statement as evidence that the declarant was anxious, but not that she actually had flying insects in her stomach.

> If the statement is offered as substantive evidence for the truth of the matter asserted, the court must examine the statement more closely and make a number of preliminary rulings. First, like all evidence, the statement must be relevant. In the context of state of mind evidence, the speaker's mindset must be pertinent to some contested issue in the legal proceeding. …

> ***

> If the statement is relevant, then the court must examine the character of the statement being proffered. If the statement is a singular expression of the declarant's state of mind, *i.e.* "I was sad," the court need only apply Rule 803(3). So long as the expression refers to the declarant's state of mind (or physical condition), and not to a third-party's state of mind, and so long as the statement refers to the speaker's mindset as it existed at the time the statement was made, facially it is admissible. Of course, a final ruling on the admissibility of the statement is subject to the final proviso of Rule 803(3) (excluding from admissibility "a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will"), as well as the traditional probative value versus prejudicial impact rubric by which all evidence is assessed.

On the other hand, if the statement is not a singular purpose statement, but instead contains both a state of mind component and a "fact-bound" component, *see* [*Commonwealth v. Moore*, 937 A.2d 1062 (Pa. 2007)], it generally is inadmissible. The reasons rendering such statements inadmissible are patent, and compelling.

As [] noted in *Moore*, such two-part statements are only relevant if they are taken for their truth. The problem is that there are two parts to these statements, only one of which facially is admissible: the state of mind component. The factual component is not. That part, which is uttered out-of-court and also offered for the truth of the matter asserted, does not satisfy this exception to the hearsay rule, nor does it possess the same hallmarks of reliability imputed to state of mind evidence. That one aspect of a statement is admissible does not render all of a multi-part statement admissible. Quite to the contrary, both components must independently be admissible. Each aspect of the statement must satisfy a hearsay exception.

In *Moore*, [our Supreme Court] explained the problem with admitting a statement into evidence where only a part of it is admissible. Doing so allows the proponent of the evidence to bootstrap inadmissible hearsay into competent evidence. This permits a party to use the state of mind exception as a mechanism to circumvent the rules of evidence, repurposing state of mind evidence into a "conduit" to obtain admission of otherwise inadmissible facts. *Moore*, 937 A.2d at 1072-73.

*Id.* at 479-81 (footnote and some citations omitted).

With this background in mind, we address the parties' arguments. Mrs. Hagelauer argues the email statement "Also cleared by the doc to play, provided I drink and eat something before playing. Apparently that is a thing now …" was admissible either as non-hearsay state of mind or under the then-existing state of mind hearsay exception. Appellant's Brief, at 54, 57, 62-68. Mrs. Hagelauer agrees a limiting instruction would have been appropriate if the email was admitted under either basis, as it is unknown whether Mr.

- 8 -

Hagelauer was referring to Dr. Brilliant, the emergency room doctor who treated him on April 28, 2018, or to Dr. Khalifa, Mr. Hagelauer's primary care physician, whose office had called him to schedule an appointment prior to this email. ***See id.*** at 61-62, 68.

Appellees note this statement is double hearsay, as it not only is Mr. Hagelauer's statement, but also a statement from an unknown "doc." Dr. Brilliant's Brief, at 8-9. Therefore, Appellees argue, both portions of the statement must meet hearsay exceptions. ***See id.*** As Mrs. Hagelauer never established a hearsay exception for the factual assertion that a doctor cleared Mr. Hagelauer to play tennis, Appellees assert the entire statement is inadmissible. ***See id.*** at 10. Further, Appellees argue Mrs. Hagelauer is unable to establish prejudice because the jury found Defendants not negligent, therefore they did not deliberate over whether Mr. Hagelauer was contributorily negligent for failing to follow up with his primary care physician. ***See id.*** at 14-15 (citing ***Boyle***, 6 A.3d at 496); Paoli Hospital's Brief at 14. Appellees also note that Mrs. Hagelauer waived any claim this email is admissible for any purpose other than contributory negligence as they did not argue any other basis for the email during trial. ***See*** Paoli Hospital's Brief at 17-18. Finally, Appellees dispute that a limiting instruction would have avoided any prejudice to them, as the evidence would have led the jury to speculate which doctor advised Mr. Hagelauer he was cleared to play tennis. ***See id.*** at 19-20.

During trial, when Mrs. Hagelauer attempted to introduce the email, a sidebar was held on the record to address Appellees' hearsay objections. *See* N.T. Trial, 2/22/24, at 221-29. During this sidebar, Mrs. Hagelauer argued the email "is hearsay but it falls under the Hearsay Exception as to his state of mind, what his thought or belief was at that time." *Id.* at 223. Mrs. Hagelauer further argued "[i]t's a state of mind about his availability and ability to continue to play tennis." *Id.* at 225. The trial court took a short break to review the law surrounding the then-existing state of mind hearsay exception. *See id.* at 225-26. Upon returning and issuing its decision denying admission, Mrs. Hagelauer sought to make a record for admission. *See id.* at 227. Mrs. Hagelauer solely argued the email admissible under Rule 803(3), the hearsay exception for then-existing state of mind. *See id.* at 227-28.

Because Mrs. Hagelauer did not argue during trial that the email was admissible as non-hearsay state of mind evidence, we will not consider that claim any further. *See* Pa.R.C.P. 227.1(b)(2) ("Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds"); *Harris v. Felouzis*, 331 A.3d 919, 930-31 (Pa. Super. 2025) (a party cannot assert a new legal theory for relief in a post-trial motion to preserve that issue for appeal; all theories must be presented during trial to be preserved).

Turning to whether this email is admissible under the hearsay exception of a then-existing state of mind, as argued by Mrs. Hagelauer during trial, we

find the trial court did not abuse its discretion. The email is not a singular expression of Mr. Hagelauer's state of mind. The email specifically references a "doc" told him he was cleared to play tennis. Plaintiff's Motion for Post-Trial Relief, 3/11/24, Exhibit B. This fact-bound statement is inadmissible unless another hearsay exception applies. *See Fitzpatrick*, 255 A.3d at 480. Mrs. Hagelauer has not argued any hearsay exception for this fact-bound statement. Therefore, the trial court correctly determined the email is inadmissible and this claim does not merit relief.

Mrs. Hagelauer's second and final issue on appeal asserts the trial court erred in precluding a full and fair cross-examination of Defendants' expert, Dr. Raja. *See* Appellant's Brief, at 69. Dr. Raja testified to his opinion that Defendants did not breach the standard of care in their treatment decisions, including releasing Mr. Hagelauer from the hospital. *See* N.T. Trial, 2/27/24, at 19, 20, 33-34. Dr. Raja opined that Mr. Hagelauer did not have a serious cause for his syncope on April 28, 2018. *See id.* at 20, 22. Even though there was no serious cause for Mr. Hagelauer's syncope, "Dr. Brilliant offered Mr. Hagelauer the opportunity to stay overnight [in the hospital]." *Id.* Dr. Raja believed there was no reason for Mr. Hagelauer to be admitted to the hospital, and no reason for the hospital to request a cardiology consult. *See id.* at 34.

During cross-examination, Mrs. Hagelauer attempted to impeach Dr. Raja with an article listed on his curriculum vitae ("CV"). The article, listed on Dr. Raja's CV under the main heading "Report of Scholarship" and subheading

"Professional Educational Materials or Reports, in print or other media," is titled "New Guidelines for the Evaluation of Adults and Children with Suspected Syncope." Dr. Raja's CV, 3/12/21, at 63, 82, 87. This article was written for the magazine NEJM Journal Watch. *See id.* at 87. The author on the article is listed as "Ali S. Raja, MD, MBA MPH, reviewing Shen W-K et al. Circulation 2017 March 9." New Guidelines for the Evaluation of Adults and Children with Suspected Syncope, 3/29/17, at 1. This article indicated that "[h]ospital admission is recommended for patients with serious medical conditions" and where the syncope occurred during exertion, an echocardiogram and exercise stress testing should be conducted. *Id.* at 1, 2.

When Mrs. Hagelauer attempted to introduce Dr. Raja's article and the opinions expressed within the article, Dr. Raja distanced himself from it. *See* N.T. Trial, 2/27/24, at 39-42. Dr. Raja first denied writing any guidelines related to syncope. *See id.* at 39. Dr. Raja explained he was the editor of Journal Watch and regularly published summaries of other people's guidelines. *See id.* at 39-40. Dr. Raja then indicated that the magazine and his article were not reliable and not relied upon by emergency medicine physicians. *See id.* at 40. When Mrs. Hagelauer attempted to impeach Dr. Raja with this article, Appellees objected and a sidebar was held on the record. *See id.* at 41-42. The trial court held the article may only be used to impeach Dr. Raja "if [Mrs. Hagelauer] can establish that [Dr. Raja] wrote those guidelines[; that Dr. Raja] created them[.]" *Id.* at 45.

Mrs. Hagelauer claims this was error, as this article is a writing signed and adopted by Dr. Raja under the hearsay exception for a prior inconsistent statement of declarant-witness. *See* Appellant's Brief, at 72-73; Pa.R.E. 803.1(1)(B). Alternatively, Mrs. Hagelauer argues that even if the article is not admissible as substantive evidence, she was entitled to impeach Dr. Raja as the article is a prior inconsistent statement under Rule 613. *See id.* at 74-75; Pa.R.E. 613(a).

Appellees respond that Dr. Raja did not author or adopt the article as his own writing, therefore, the article is inadmissible both as substantive evidence and for use on cross-examination. *See* Dr. Brilliant's Brief, at 21; Paoli Hospital's Brief, at 24-25. We disagree.

As admitted by Mrs. Hagelauer, the article, "New Guidelines for the Evaluation of Adults and Children with Suspected Syncope" is hearsay. *See* Appellant's Brief, at 72; Pa.R.E. 801(c). Notably, the article was written by Dr. Raja. *See* New Guidelines for the Evaluation of Adults and Children with Suspected Syncope, 3/29/17, at 1. The exception to the rule against hearsay provides "[a] prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and… is a writing signed and adopted by the declarant" is admissible as substantive evidence. Pa.R.E. 803.1(1)(B).

Dr. Raja admitted to writing the article but denied writing the actual guidelines. *See* N.T. Trial, 2/27/24, at 39-40. The trial court erred in requiring Mrs. Hagelauer establish Dr. Raja wrote the guidelines, as she was not

attempting to admit the guidelines; she was attempting to admit Dr. Raja's article that summarized the guidelines.

In regard to Appellees' argument, it is incredulous to believe Dr. Raja would author an article that he did not adopt and support. His name is listed on the byline as author and he listed the article on his CV as one of his "[p]rofessional [e]ducational [m]aterials or [r]eports[.]" Just as dubious is Dr. Raja's attempt to distance himself at trial from the assertion that he wrote this article, which in any event does not preclude its admission under Rule 803.1(1)(B), as when he listed himself as author of the article, he signed and adopted the writing as his own work, whether or not he copied others work in drafting the article.[1] Dr. Raja's testimony would go to the weight to be given the article, not its admissibility. As such, the trial court erred in precluding Mrs. Hagelauer from cross-examining Dr. Raja with his own article that conflicts with his testimony during trial. We find this error prejudiced Mrs. Hagelauer as without admission of this article, Mrs. Hagelauer was effectively precluded from impeaching Dr. Raja with his own previous work product and

_____

[1] If this article were not Dr. Raja's own work, his distancing himself might have precluded admission as solely impeachment material. *See Charlton v. Troy*, 236 A.3d 22, 39 (Pa. Super. 2020) ("an expert witness may be cross-examined on the contents of a publication … which the expert acknowledges to be a standard work in the field. In such cases, the publication or literature is not admitted for the truth of the matter asserted, but only to challenge the credibility of the witness's opinion and the weight to be accorded thereto.") (citations omitted). Based upon our decision the article is admissible as substantive evidence, we do not reach this issue.

opinion. This resulted in the jury being unable to evaluate a significant factor weighing on Dr. Raja's credibility. We therefore vacate the judgment and remand for a new trial.

Judgment vacated. New trial ordered. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2025